## LINDSEY ET AL. *v.* NORMET ET AL.

No. 70–5045.  Argued November 15, 1971—
Decided February 23, 1972

White, J., delivered the opinion of the Court, in which Burger, C. J., and Stewart, Marshall, and Blackmun, JJ., joined. Douglas, J., *post*, p. 79, and Brennan, J., *post*, p. 90, filed opinions dissenting in part. Powell and Rehnquist, JJ., took no part in the consideration or decision of the case.

*John H. Clough* argued the cause for appellants. With him on the briefs was *Myron Moskovitz*.

*Theodore B. Jensen* argued the cause for appellee Normet. With him on the briefs was *Donald J. DeFrancq*.

Briefs of *amici curiae* urging reversal were filed by *Delane C. Carpenter* for the Pima County Bar Assn.; by *Howard W. Dixon, Bruce S. Rogow*, and *Steven Rappaport* for Legal Services of Greater Miami, Inc.; by *Helen S. White* and *Gerald D. McGonigle* for New Hampshire Legal Assistance; by *W. J. Michael Cody III* for Memphis and Shelby County Legal Services Assn., Inc.; by *Elizabeth M. Brooks* for June Brooks; by *Paul L. McKaskle* for Western Center on Law and Poverty; by *Martin R. Glenn* and *John G. O'Mara* for Legal Aid Society of Louisville; by *Andrea M. Alcarese* for Legal

Aid Bureau, Inc.; by *Nancy E. LeBlanc* for Community Action for Legal Services, Inc., et al.; and by *Franklin Arthur Martens* for Allen County Legal Aid Society et al.

MR. JUSTICE WHITE delivered the opinion of the Court.

This case presents the question of whether Oregon's judicial procedure for eviction of tenants after nonpayment of rent violates either the Equal Protection Clause or the Due Process Clause of the Fourteenth Amendment.

The material facts were stipulated. Appellants were the month-to-month tenants of appellee Normet [1] and paid $100 a month for the use of a single-family residence in Portland, Oregon. On November 10, 1969, the City Bureau of Buildings declared the dwelling unfit for habitation due to substandard conditions on the premises.[2] Appellants requested appellee to make certain repairs which, with one minor exception, appellee refused to do. Appellants, who had paid the November rent, refused to

---

[1] The original complaint was filed on behalf of Donald and Edna Lindsey, seven other named plaintiffs (one of whom was an intervenor), and all other persons similarly situated. Permission to maintain the suit as a class action was granted, App. 33, but the class was not further defined. The other named plaintiffs raised claims essentially similar to the Lindseys, who were the only two plaintiffs to appeal and who are hereafter termed "appellants." Appellee Normet was the owner of the seller's interest in the property rented to the appellants and held the legal title to secure the purchaser's performance of the contract of sale. An assignee of the purchaser's interest in the contract had rented the residence to appellants. The trial court found, however, that there was a landlord-tenant relationship between appellee and appellants at the time the suit was filed. App. 71.

[2] It was stipulated that city inspectors found rusted gutters, broken windows, broken plaster, missing rear steps, and improper sanitation, all in violation of the Portland Housing Code, and that the inspectors posted a notice that the dwelling was required to be vacated within 30 days unless the owner could show cause why the building should not be declared unfit for occupancy. App. 43.

pay the December rent until the requested improvements had been made. Appellee's attorney wrote a letter on December 15 threatening to "get a Court Order out on this matter" unless the accrued rent was immediately paid.

On January 7, 1970, however, before statutory eviction procedures were begun in the Oregon courts, appellants filed suit in federal district court under 42 U. S. C. § 1983 seeking a declaratory judgment that the Oregon Forcible Entry and Wrongful Detainer (hereinafter sometimes FED) Statute, Ore. Rev. Stat. (ORS) §§ 105.105–105.160,[3]

---

[3] In its entirety, the Oregon Forcible Entry and Wrongful Detainer Statute provides:

"FORCIBLE ENTRY AND WRONGFUL DETAINER

"105.105  Entry to be lawful and peaceable only.  No person shall enter upon any land, tenement or other real property unless the right of entry is given by law.  When the right of entry is given by law the entry shall be made in a peaceable manner and without force.

"105.110  Action for forcible entry or wrongful detainer.  When a forcible entry is made upon any premises, or when an entry is made in a peaceable manner and possession is held by force, the person entitled to the premises may maintain in the county where the property is situated an action to recover the possession thereof in the circuit court, district court or before any justice of the peace of the county.

"105.115  Causes of unlawful holding by force.  The following are causes of unlawful holding by force within the meaning of ORS 105.110 and 105.125:

"(1) When the tenant or person in possession of any premises fails or refuses to pay rent within 10 days after it is due under the lease or agreement under which he holds, or to deliver possession of the premises after being in default on payment of rent for 10 days.

"(2) When the lease by its terms has expired and has not been renewed, or when the tenant or person in possession is holding from month to month, or year to year, and remains in possession after notice to quit as provided in ORS 105.120, or is holding contrary to any condition or covenant of the lease or is holding possession without any written lease or agreement.

"105.120  Notice necessary to maintain action in certain cases; waiver of notice; effect of advance payments of rent.  (1) An action

was unconstitutional on its face, and an injunction against its continued enforcement.  A three-judge court was convened under 28 U. S. C. § 2281, a temporary restraining

for the recovery of the possession of the premises may be maintained in cases provided in subsection (2) of ORS 105.115, when the notice to terminate the tenancy or to quit has been served upon the tenant or person in possession in the manner prescribed by ORS 91.110 and for the period prescribed by ORS 91.060 to 91.080 before the commencement of the action, unless the leasing or occupation is for the purpose of farming or agriculture, in which case such notice must be served for a period of 90 days before the commencement of the action.

"(2) Any person entering into the possession of real estate under written lease as the tenant of another may, by the terms of his lease, waive the giving of any notice required by this section.

"(3) The service of a notice to quit upon a tenant or person in possession does not authorize an action to be maintained against him for the possession of premises before the expiration of any period for which the tenant or person has paid the rent of the premises in advance.

"105.125  Complaint.  In an action pursuant to ORS 105.110 it is sufficient to state in the complaint:

"(1) A description of the premises with convenient certainty;

"(2) That the defendant is in possession of the premises;

"(3) That he entered upon the premises with force or unlawfully holds the premises with force; and

"(4) That the plaintiff is entitled to the possession of the premises.

"105.130  How action conducted.  Except as provided in ORS 105.135 to 105.160, an action pursuant to ORS 105.110 shall be conducted in all respects as other actions in courts of this state.

"105.135  Service and return of summons.  The summons shall be served and returned as in other actions.  The service shall be not less than two or more than four days before the day of trial appointed by the court.

"105.140  Continuance.  No continuance shall be granted for a longer period than two days unless the defendant applying therefor gives an undertaking to the adverse party with good and sufficient security, to be approved by the court, conditioned for the payment of the rent that may accrue if judgment is rendered against the defendant.

"105.145  Judgment on trial by court.  If the action is tried by

order was issued against the enforcement of the FED Statute, and appellants were ordered to make their rent payments into an escrow account during the pendency of

the court without a jury, and after hearing the evidence it concludes that the complaint is not true, it shall enter judgment against the plaintiff for costs and disbursements. If the court finds the complaint true or if judgment is rendered by default, it shall render a general judgment against the defendant and in favor of the plaintiff, for restitution of the premises and the costs and disbursements of the action. If the court finds the complaint true in part, it shall render judgment for the restitution of such part only, and the costs and disbursements shall be taxed as the court deems just and equitable.

"105.150 Verdict and judgment on trial by jury. If the action is tried by a jury and they find the complaint true, they shall render a general verdict of guilty against the defendant; if not true, they shall render a general verdict of not guilty; if true in part, they shall render a verdict setting forth the facts they find, and the court shall render judgment according to the verdict.

"105.155 Form of execution. The execution, should judgment of restitution be rendered, may be in the following form:

State of Oregon, ⎱
County of ———— ⎰ ss.

To the sheriff or any constable of the county:

Whereas, a certain action for the forcible entry and detention, (or the forcible detention) of the following described premises, to wit: ————————————————, lately tried before the above entitled court, wherein ———————— was plaintiff and ———————— was defendant, judgment was rendered on the ——— day of ———, A. D., ———, that the plaintiff ———————— have restitution of the premises, and also that he recover the costs and disbursements in the sum of $————;

In the name of the State of Oregon, you are, therefore, hereby commanded to cause the defendant and his goods and chattels to be forthwith removed from the premises and the plaintiff is to have restitution of the same. In the event the goods and chattels are not promptly removed thereafter by the defendant you are authorized and empowered to cause the same to be removed to a safe place for storage. You are also commanded to levy on the goods and

the District Court proceeding. A lengthy stipulation of facts was agreed upon, a number of exhibits and depositions were submitted, and the District Court then granted appellee's motion to dismiss the complaint,[4] after concluding that the statute was not unconstitutional under either the Due Process Clause or the Equal Protection Clause of the Fourteenth Amendment.[5] Appel-

---

chattels of the defendant, and make the costs and disbursements, aforesaid, and all accruing costs, and to make legal service and due return of this writ.

Witness my hand and official seal (if issued out of a court of record) this —— day of ——, A. D., ——.

Justice of the peace, or clerk
of the district or circuit court.

"105.160 Additional undertaking on appeal. If judgment is rendered against the defendant for the restitution of the real property described in the complaint, or any part thereof, no appeal shall be taken by the defendant from the judgment until he gives, in addition to the undertaking now required by law upon appeal, an undertaking to the adverse party, with two sureties, who shall justify in like manner as bail upon arrest, for the payment to the plaintiff if the judgment is affirmed on appeal of twice the rental value of the real property of which restitution is adjudged from the commencement of the action in which the judgment was rendered until final judgment in the action."

[4] Civ. No. 70–8, Sept. 10, 1970, D. Ore. (unreported). Reprinted at App. 72.

[5] The District Court correctly declined to abstain from considering the constitutionality of the FED Statute since: "The challenged statute is clear. It is unlikely that an application of state law would change the posture of the federal constitutional issues. No state administrative process is involved. The case has been thoroughly briefed and argued on the merits, and is presented on a clear and complete record." App. 73. Since the judicially created doctrine of abstention involves duplication of effort and expense and an attendant delay, see *England* v. *Louisiana State Board of Medical Examiners*, 375 U. S. 411, 418 (1964), this Court has emphasized that it should be applied only "where the issue of state law is un-

lants promptly appealed, and we noted probable jurisdiction.[6]

## I

The Oregon Forcible Entry and Wrongful Detainer Statute establishes a procedure intended to insure that any entry upon real property "shall be made in a peaceable manner and without force." § 105.105. A landlord may bring an action for possession whenever the tenant has failed to pay rent within 10 days of its due date, when the tenant is holding contrary to some other covenant in a lease, and whenever the landlord has terminated the rental arrangement by proper notice and the tenant remains in possession after the expiration date specified in the notice. § 105.115. Service of the complaint on the tenant must be not less than two nor more than four days before the trial date, § 105.135; a tenant may obtain a two-day continuance, but grant of a longer continuance is conditioned on a tenant's posting security for the payment of any rent that may accrue, if the plaintiff ultimately prevails, during the period of the continuance. § 105.140. The suit may be tried to either a judge or a jury, and the only issue is whether the allegations of the complaint are true, §§ 105.145, 105.150. The only award that a plaintiff may recover is restitution of possession. § 105.155. A defendant who loses such a suit may appeal only if he obtains two sureties who will provide security for the payment to the plaintiff, if the defendant ultimately loses on appeal, of twice the

certain," *Harman* v. *Forssenius,* 380 U. S. 528, 534 (1965), and "only in narrowly limited 'special circumstances,'" *Zwickler* v. *Koota,* 389 U. S. 241, 248 (1967) (citing *Propper* v. *Clark,* 337 U. S. 472, 492 (1949)). See *Reetz* v. *Bozanich,* 397 U. S. 82 (1970). The Oregon FED Statute had been in effect for over 100 years, and there is a substantial body of interpretative decisions by the Oregon courts.

[6] 402 U. S. 941 (1971).

rental value of the property from the time of commencement of the action to final judgment. § 105.160.[7]

Appellants' principal attacks [8] are leveled at three characteristics of the Oregon FED Statute: the requirement of a trial no later than six days after service of the complaint unless security for accruing rent is provided; the provisions of § 105.145 which, either on their face or as construed, are said to limit the triable issues in an FED suit to the tenant's default and to preclude consideration of defenses based on the landlord's breach of a duty to maintain the premises; and the requirement of posting bond on appeal from an adverse decision in twice the amount of the rent expected to accrue pending appellate decision. These provisions are asserted to violate both the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Except for the appeal bond requirement (see Part IV, *infra*), we reject these claims.

## II

We are unable to conclude that either the early-trial provision or the limitation on litigable issues is invalid on its face under the Due Process Clause of the Fourteenth Amendment. In those recurring cases where the tenant fails to pay rent or holds over after expiration of his tenancy and the issue in the ensuing litigation

---

[7] If the FED action is initiated in the district court instead of the circuit court, the double bond is required for a trial *de novo* in the circuit court. ORS §§ 46.250, 53.090. Appellants do not, however, contend that there is anything unconstitutional about the District Court trial, except for the claims noted above, and they do not contend that the dual level trial system itself violates their constitutional rights. Brief for Appellants 63.

[8] Appellants make a conclusory argument that allowing a landlord to allege that the tenant is guilty of "unlawful holding by force" is impermissible on grounds of vagueness. Brief for Appellants 58–59. ORS § 105.115 adequately defines this term, however, see n. 3, *supra,* and the District Court properly rejected this argument.

is simply whether he has paid or held over, we cannot declare that the Oregon statute allows an unduly short time for trial preparation. Tenants would appear to have as much access to relevant facts as their landlord, and they can be expected to know the terms of their lease, whether they have paid their rent, whether they are in possession of the premises, and whether they have received a proper notice to quit, if one is necessary. Particularly where, as here, rent has admittedly been deliberately withheld and demand for payment made, claims of prejudice from an early trial date are unpersuasive. The provision for continuance of the action if the tenant posts security for accruing rent means that in cases where tenant defendants, unlike appellants, deny nonpayment of rent and may require more time to prepare for litigation, they will not be forced to trial if they provide for rent payments in the interim. A requirement that the tenant pay or provide for the payment of rent during the continuance of the action is hardly irrational or oppressive. It is customary to pay rent in advance, and the simplicity of the issues in the typical FED action will usually not require extended trial preparation and litigation, thus making the posting of a large security deposit unnecessary. Of course, it is possible for this provision to be applied so as to deprive a tenant of a proper hearing in specific situations, but there is no such showing made here, and possible infirmity in other situations does not render it invalid on its face.[9]

Nor does Oregon deny due process of law by restricting the issues in FED actions to whether the tenant has paid rent and honored the covenants he has assumed, issues that may be fairly and fully litigated under the Oregon procedure. The tenant is barred from raising

---

[9] *United States* v. *National Dairy Corp.*, 372 U. S. 29, 32 (1963); *United States* v. *Raines*, 362 U. S. 17, 22 (1960).

claims in the FED action that the landlord has failed to maintain the premises, but the landlord is also barred from claiming back rent or asserting other claims against the tenant.[10] The tenant is not foreclosed from instituting his own action against the landlord and litigating his right to damages or other relief in that action.[11]

"Due process requires that there be an opportunity to present every available defense." *American Surety Co. v. Baldwin,* 287 U. S. 156, 168 (1932). See also *Nickey v. Mississippi,* 292 U. S. 393, 396 (1934). Appellants do not deny, however, that there are available procedures to litigate any claims against the landlord cognizable in Oregon. Their claim is that they are denied due process of law because the rental payments are not suspended while the alleged wrongdoings of the landlord are litigated.[12] We see no constitutional barrier to Ore-

[10] ORS § 16.220 (1)(i) provides that when a plaintiff joins an FED action with an action for rental due, "the defendant shall have the same time to answer, or otherwise plead, as is now provided by law in actions for the recovery of rental due." ORS § 91.220 provides that accrued rent may be recovered in an "action at law" which is subject to the general rules of pleading and procedure enumerated in § 16.010 and not the special FED procedures.

[11] Oregon also recognizes certain equitable defenses in FED actions, see *Leathers v. Peterson,* 195 Ore. 62, 244 P. 2d 619 (1952) (mental incompetence); *Crossen v. Campbell,* 102 Ore. 666, 202 P. 745 (1921) (forfeiture of lease); *Friedenthal v. Thompson,* 146 Ore. 640, 31 P. 2d 643 (1934) (reformation of lease); *Menefee Lumber Co. v. Abrams,* 138 Ore. 263, 5 P. 2d 709 (1931) (lessor's breach of dependent covenant not to rent another part of premises to business competitive with lessee—tried by stipulation), and ORS § 16.460 provides that when an equitable matter is interposed, the FED action will be stayed until the equitable matters are determined. Apparently, however, the defenses sought to be raised by appellants are not in this category.

[12] This claim is explicitly presented in the complaint: "For their cause of action, said Plaintiffs set forth the following: . . . (c) That said Defendant-Landlords have a duty to refrain from taking retali-

gon's insistence that the tenant provide for accruing rent pending judicial settlement of his disputes with the lessor.[13]

The Court has twice held that it is permissible to segregate an action for possession of property from other actions arising out of the same factual situation that may assert valid legal or equitable defenses or counterclaims. In *Grant Timber & Mfg. Co.* v. *Gray*, 236 U. S. 133 (1915) (Holmes, J.), the Court upheld against due process attack a Louisiana procedure that provided that a defendant sued in a possessory action for real property could not bring an action to establish title or present equitable claims until after the possessory suit was

---

atory measures against said Plaintiffs as a result of this action or as a result of reporting Housing Code violations or as a result of Plaintiffs withholding rent to compel the Defendant-Landlords to repair the premises." App. 24. Appellants stipulated that, if permitted, they would raise various legal and equitable defenses (unconstitutionality of the proceeding, illegality of contract, failure of consideration, warranty of fitness of habitability, unclean hands of landlord) if an FED action were brought against them. App. 44. It is sufficiently clear from the District Court's pretrial order that all of the parties, including the defendant state court judge, agreed that the defenses appellants desired to press were unavailable in Oregon FED actions. The District Court agreed that this accurately reflected Oregon law. In these circumstances, therefore, there was no reason for the District Court to abstain. See n. 5, *supra*.

[13] At oral argument, appellants conceded that if a tenant remained in possession without paying rent, a landlord might be deprived of property without due process of law:

"Q: If you didn't have that deposit in escrow [rent paid by tenants during litigation], might you not be confronted with a counter-suggestion that this is a taking of property without due process, without compensation?

"Mr. Clough: Of course; that is correct.

"Q: But you would accept that as an invariable condition to maintaining possession?

"Mr. Clough: Yes, we'd have no problem with that." Tr. of Oral Arg. 14.

brought to a conclusion.[14]    In *Bianchi* v. *Morales,* 262 U. S. 170 (1923) (Holmes, J.), the Court considered Puerto Rico's mortgage law which provided for summary foreclosure of a mortgage without allowing any defense except payment.    The Court concluded that it was permissible under the Due Process Clause to "exclude all claims of ultimate right from possessory actions," *id.,* at 171, and to allow other equitable defenses to be set up in a separate action to annul the mortgage.

Underlying appellants' claim is the assumption that they are denied due process of law unless Oregon recognizes the failure of the landlord to maintain the premises as an operative defense to the possessory FED action and as an adequate excuse for nonpayment of rent.    The Constitution has not federalized the substantive law of landlord-tenant relations, however, and we see nothing to forbid Oregon from treating the undertakings of the tenant and those of the landlord as independent rather than dependent covenants.    Likewise, the Constitution does not authorize us to require that the term of an otherwise expired tenancy be extended while the tenant's damage claims against the landlord are litigated.    The substantive law of landlord-tenant relations differs

---

[14] "It would be a surprising extension of the Fourteenth Amendment if it were held to prohibit the continuance of one of the most universal and best known distinctions of the mediaeval law.    From the *exceptio spolii* of the Pseudo-Isidore the Canon Law and Bracton to the assize of novel disseisin the principle was of very wide application that a wrongful disturbance of possession must be righted before a claim of title would be listened to—or at least that in a proceeding to right such disturbance a claim of title could not be set up; and from Kant to Ihering there has been much philosophising as to the grounds.    But it is unnecessary to follow the speculations or to consider whether the principle is eternal or a no longer useful survival.    The constitutionality of the law is independent of our views upon such points."    *Grant Timber & Mfg. Co.* v. *Gray,* 236 U. S. 133, 134 (1915).

widely in the various States. In some jurisdictions, a tenant may argue as a defense to eviction for nonpayment of rent such claims as unrepaired building code violations, breach of an implied warranty of habitability, or the fact that the landlord is evicting him for reporting building code violations or for exercising constitutional rights.[15] Some States have enacted statutes authorizing rent withholding in certain situations.[16] In other jurisdictions, these claims, if cognizable at all, must be litigated in separate tort, contract, or civil rights suits. There is no showing that Oregon excludes any defenses it recognizes as "available" on the three questions (physical possession, forcible withholding, legal right to possession) at issue in an FED suit.

## III

We also cannot agree that the FED Statute is invalid on its face under the Equal Protection Clause. It is true that Oregon FED suits differ substantially from other

[15] For various tenant remedies for housing code violations, see N. Y. Real Prop. Actions Law §§ 769–782 (Supp. 1971–1972); *Brown* v. *Southall Realty Co.,* 237 A. 2d 834 (D. C. Ct. App. 1968); S. D. Comp. Laws Ann. § 43–32–9 (1967). For recognition of an implied warranty of habitability, see *Pines* v. *Perssion,* 14 Wis. 2d 590, 111 N. W. 2d 409 (1961); *Earl Millikin, Inc.* v. *Allen,* 21 Wis. 2d 497, 124 N. W. 2d 651 (1963); Cal. Civ. Code § 1941 (1954 and Supp. 1971). For prohibitions against various kinds of retaliatory evictions, see Ill. Rev. Stat., c. 80, § 71 (1971); Mich. Comp. Laws § 564.204, added by Pub. Acts 1968, c. 2, Mich. Stat. Ann. § 26.1300 (204) (1970); *Edwards* v. *Habib,* 130 U. S. App. D. C. 126, 397 F. 2d 687 (1968), cert. denied, 393 U. S. 1016 (1969); *United States* v. *Bruce,* 353 F. 2d 474 (CA5 1965); *United States* v. *Beaty,* 288 F. 2d 653 (CA6 1961).

[16] N. Y. Mult. Resid. Law § 305–a (Supp. 1971–1972); Ill. Rev. Stat., c. 23, § 11–23 (1971); Mass. Gen. Laws Ann., c. 239, § 8A (Supp. 1971); Pa. Stat. Ann., Tit. 35, § 1700–1 (Supp. 1971). See generally Comment, Rent Withholding and the Improvement of Substandard Housing, 53 Calif. L. Rev. 304 (1965).

litigation, where the time between complaint and trial is substantially longer,[17] and where a broader range of issues may be considered. But it does not follow that the Oregon statute invidiously discriminates against defendants in FED actions.

The statute potentially applies to all tenants, rich and poor, commercial and noncommercial; it cannot be faulted for over-exclusiveness or under-exclusiveness. And classifying tenants of real property differently from other tenants for purposes of possessory actions will offend the equal protection safeguard "only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective," *McGowan* v. *Maryland,* 366 U. S. 420, 425 (1961), or if the objective itself is beyond the State's power to achieve, *Gomillion* v. *Lightfoot,* 364 U. S. 339 (1960); *NAACP* v. *Alabama,* 377 U. S. 288 (1964); *Douglas* v. *California,* 372 U. S. 353 (1963). It is readily apparent that prompt as well as peaceful resolution of disputes over the right to possession of real property is the end sought by the Oregon statute.[18] It is also clear that the provisions for early trial and simplification of issues are closely related to that purpose. The equal protection claim with respect to these pro-

---

[17] An FED defendant has from two to six days between the serving of the complaint and trial unless he files a continuance bond. See §§ 105.135, 105.140, n. 3, *supra.*

[18] The statute itself declares the public policy of the State of Oregon to be that: "No person shall enter upon any land, tenement or other real property unless the right of entry is given by law. When the right of entry is given by law the entry shall be made in a peaceable manner and without force." § 105.105. One out of actual possession of real property, although lawfully entitled to such possession, is liable criminally for assault and battery if, instead of filing an FED action, he accomplishes an entry upon such real property by the exertion of force against the person of an actual occupant who opposes and resists such entry. *Coghlan* v. *Miller,* 106 Ore. 46, 54–56, 211 P. 163, 166–167 (1922).

visions thus depends on whether the State may validly single out possessory disputes between landlord and tenant for especially prompt judicial settlement. In making such an inquiry a State is "presumed to have acted within [its] constitutional power despite the fact that, in practice, [its] laws result in some inequality." *McGowan* v. *Maryland, supra,* at 425-426.

At common law, one with the right to possession could bring an action for ejectment, a "relatively slow, fairly complex, and substantially expensive procedure." [19] But, as Oregon cases have recognized, the common law also permitted the landlord to "enter and expel the tenant by force, without being liable to an action of tort for damages, either for his entry upon the premises, or for an assault in expelling the tenant, provided he uses no more force than is necessary, and do[es] no wanton damage." *Smith* v. *Reeder,* 21 Ore. 541, 546, 28 P. 890, 891 (1892). The landlord-tenant relationship was one of the few areas where the right to self-help was recognized by the common law of most States, and the implementation of this right has been fraught with "violence and quarrels and bloodshed." *Entelman* v. *Hagood,* 95 Ga. 390, 392, 22 S. E. 545 (1895).[20] An alternative legal remedy to prevent such breaches of the peace has appeared to be an overriding necessity to many legislators and judges.

Hence, the Oregon statute was enacted in 1866 to alter the common law and obviate resort to self-help and violence. The statute, intended to protect tenants as well as landlords, provided a speedy, judicially super-

---

[19] A. Casner & W. Leach, Cases and Text on Property 451 (2d ed. 1969).

[20] See Annot., Right of Landlord to Dispossess Tenant Without Legal Process, 45 A. L. R. 313 (1926), 49 A. L. R. 517 (1927), 60 A. L. R. 280 (1929), 101 A. L. R. 476 (1936), 6 A. L. R. 3d 177 (1966).

vised proceeding to settle the possessory issue in a peaceful manner:

> "But if [the landlord] forcibly enter and expel the tenant, while he may not be liable to him in an action of tort, he is guilty of a violation of the forcible entry and detainer act, which is designed to protect the public peace; and in such case the law will award restitution to the tenant, not because it recognizes any rights in him, but for the reason that out of regard for the peace and good order of society it does not permit a person in the quiet and peaceable possession of land to be disturbed by force, even by one lawfully entitled to the possession."
> *Smith* v. *Reeder,* 21 Ore., at 546–547, 28 P., at 891.

Before a tenant is forcibly evicted from property the Oregon statute requires a judicial determination that he is not legally entitled to possession. "The action of forcible entry and detainer is intended for the benefit of him whose possession is invaded." *Taylor* v. *Scott,* 10 Ore. 483, 485 (1883). The objective of achieving rapid and peaceful settlement of possessory disputes between landlord and tenant has ample historical explanation and support. It is not beyond the State's power to implement that purpose by enacting special provisions applicable only to possessory disputes between landlord and tenant.

There are unique factual and legal characteristics of the landlord-tenant relationship that justify special statutory treatment inapplicable to other litigants. The tenant is, by definition, in possession of the property of the landlord; unless a judicially supervised mechanism is provided for what would otherwise be swift repossession by the landlord himself, the tenant would be able to deny the landlord the rights of income incident to ownership by refusing to pay rent and by preventing sale or rental to someone else. Many expenses of the

landlord continue to accrue whether a tenant pays his rent or not. Speedy adjudication is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession when his lease or rental agreement gives him the right to peaceful and undisturbed possession of the property. Holding over by the tenant beyond the term of his agreement or holding without payment of rent has proved a virulent source of friction and dispute. We think Oregon was well within its constitutional powers in providing for rapid and peaceful settlement of these disputes.

Appellants argue, however, that a more stringent standard than mere rationality should be applied both to the challenged classification and its stated purpose. They contend that the "need for decent shelter" and the "right to retain peaceful possession of one's home" are fundamental interests which are particularly important to the poor and which may be trenched upon only after the State demonstrates some superior interest. They invoke those cases holding that certain classifications based on unalterable traits such as race [21] and lineage [22] are inherently suspect and must be justified by some "overriding statutory purpose." They also rely on cases where classifications burdening or infringing constitutionally protected rights were required to be justified as "necessary to promote a compelling governmental interest." [23]

---

[21] *McLaughlin* v. *Florida,* 379 U. S. 184 (1964); *Loving* v. *Virginia,* 388 U. S. 1 (1967).

[22] *Korematsu* v. *United States,* 323 U. S. 214 (1944); *Takahashi* v. *Fish & Game Comm'n,* 334 U. S. 410 (1948); *Oyama* v. *California,* 332 U. S. 633 (1948); *Levy* v. *Louisiana,* 391 U. S. 68 (1968); *Glona* v. *American Guarantee & Liability Insurance Co.,* 391 U. S. 73 (1968).

[23] *Shapiro* v. *Thompson,* 394 U. S. 618, 634 (1969) (emphasis omitted) (right to travel). See also *Harper* v. *Virginia Bd. of Elections,* 383 U. S. 663, 668 (1966) (right to vote). Cf. *Skinner* v. *Oklahoma ex rel. Williamson,* 316 U. S. 535, 541 (1942).

We do not denigrate the importance of decent, safe, and sanitary housing. But the Constitution does not provide judicial remedies for every social and economic ill. We are unable to perceive in that document any constitutional guarantee of access to dwellings of a particular quality, or any recognition of the right of a tenant to occupy the real property of his landlord beyond the term of his lease without the payment of rent or otherwise contrary to the terms of the relevant agreement. Absent constitutional mandate, the assurance of adequate housing and the definition of landlord-tenant relationships are legislative, not judicial, functions. Nor should we forget that the Constitution expressly protects against confiscation of private property or the income therefrom.

Since the purpose of the Oregon Forcible Entry and Wrongful Detainer Statute is constitutionally permissible and since the classification under attack is rationally related to that purpose, the statute is not repugnant to the Equal Protection Clause of the Fourteenth Amendment.

## IV

We agree with appellants, however, that the double-bond prerequisite for appealing an FED action violates their right to the equal protection of the laws. To appeal a civil case in Oregon, the ordinary litigant must file an undertaking, with one or more sureties, covering "all damages, costs and disbursements which may be awarded against him on the appeal." ORS § 19.040.[24] In order to secure a stay of execution, the undertaking, where the judgment is for money, must also provide that the appel-

---

[24] The Oregon civil appeal bond statute provides:

"19.040 Form of undertaking on appeal; conditions for stay of proceedings; enforcement against sureties on dismissal of appeal. (1) The undertaking of the appellant shall be given with one or more sureties, to the effect that the appellant will pay all damages, costs and disbursements which may be awarded against him on the appeal;

lant will satisfy the judgment if he loses the appeal or, if the judgment is for real property, that he will commit no waste during the pendency of the appeal and, if he loses the appeal, that he will pay for the use of the property during this time. In an FED action, however, a defendant who loses in the district court and who wishes to appeal must give *"in addition to* the undertaking now required by law upon appeal," an undertaking with two sureties for the payment of twice the rental value of

---

but such undertaking does not stay the proceedings, unless the undertaking further provides to the effect following:

"(b) If the judgment or decree appealed from is for the recovery of the possession of real property, for a partition thereof, or the foreclosure of a lien thereon, that during the possession of such property by the appellant he will not commit, or suffer to be committed, any waste thereon, and that if such judgment or decree or any part thereof is affirmed, the appellant will pay the value of the use and occupation of such property, so far as affirmed, from the time of the appeal until the delivery of the possession thereof, not exceeding the sum therein specified, to be ascertained and tried by the court or judge thereof.

"(2) When the decree appealed from requires the execution of a conveyance or other instrument, execution of the decree is not stayed by the appeal, unless the instrument is executed and deposited with the clerk within the time allowed to file the undertaking, to abide the decree of the appellate court.

"(3) If the appeal is dismissed, the judgment or decree, so far as it is for the recovery of money, may, by the appellate court, be enforced against the sureties in the undertaking for a stay of proceedings, as if they were parties to the judgment or decree."

An FED action may be brought in the circuit court, the district court, or before a justice of the peace. ORS § 19.040 by its terms applies to appeals from the circuit court to the court of appeals and to the Supreme Court, but if the FED action is initiated in a district court or a justice's court, ORS § 53.040 requires that an appellant to the circuit court give an undertaking with one or more sureties that he will pay "all costs and disbursements that may be awarded against him on the appeal."

the premises "from the commencement of the action in which the judgment was rendered until final judgment in the action." ORS § 105.160. (Emphasis added.) In the event the judgment is affirmed, the landlord is automatically entitled to twice the rents accruing during the appeal without proof of actual damage in that amount. See *Priester* v. *Thrall,* 229 Ore. 184, 187, 349 P. 2d 866, 868 (1960). In *Scales* v. *Spencer,* 246 Ore. 111, 113–114, 424 P. 2d 242, 243 (1967), the Oregon Supreme Court explained the rationale of the double-bond requirement:

> "Inasmuch as a final judgment for restitution could not include a judgment for rent pending appeal it appears obvious that the legislative purpose for requiring this particular bond on appeal was to guarantee that the rent pending an appeal would be paid. That the bond must provide for double the rental value was, no doubt, intended to prevent frivolous appeals for the purpose of delay. If there were not some added cost or restriction every ousted tenant would appeal, regardless of the justification. It can also be assumed that the additional payment would compensate for waste or is in lieu of damages for the unlawful holding over."

We have earlier said that Oregon may validly make special provision for the peaceful and expeditious settlement of disputes over possession between landlord and tenant and that the early-trial and continuance bond provisions of the FED statute rationally implement that purpose because the tenant's right to possession beyond the initial six-day period is conditioned on securing the landlord against the loss of accruing rent. Similar conditions on the tenant's right to appeal, such as those imposed by § 19.040, would also raise no serious constitutional questions, at least on the face of such a statute. Section 105.160, however, imposes additional requirements that in our judgment bear no reasonable relation-

ship to any valid state objective and that arbitrarily discriminate against tenants appealing from adverse decisions in FED actions.

This Court has recognized that if a full and fair trial on the merits is provided, the Due Process Clause of the Fourteenth Amendment does not require a State to provide appellate review, *Griffin* v. *Illinois,* 351 U. S. 12, 18 (1956); *District of Columbia* v. *Clawans,* 300 U. S. 617, 627 (1937); *Ohio* v. *Akron Park District,* 281 U. S. 74, 80 (1930); *Reetz* v. *Michigan,* 188 U. S. 505, 508 (1903); *McKane* v. *Durston,* 153 U. S. 684, 687–688 (1894), and the continuing validity of these cases is not at issue here. When an appeal is afforded, however, it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause. *Griffin* v. *Illinois, supra; Smith* v. *Bennett,* 365 U. S. 708 (1961); *Lane* v. *Brown,* 372 U. S. 477 (1963); *Long* v. *District Court of Iowa,* 385 U. S. 192 (1966); *Gardner* v. *California,* 393 U. S. 367 (1969). Cf. *Coppedge* v. *United States,* 369 U. S. 438 (1962); *Ellis* v. *United States,* 356 U. S. 674 (1958).

It cannot be denied that the double-bond requirement heavily burdens the statutory right of an FED defendant to appeal. While a State may properly take steps to insure that an appellant post adequate security before an appeal to preserve the property at issue, to guard a damage award already made, or to insure a landlord against loss of rent if the tenant remains in possession, the double-bond requirement here does not effectuate these purposes since it is unrelated to actual rent accrued or to specific damage sustained by the landlord. This requirement is unnecessary to assure the landlord payment of accrued rent since the undertaking an FED defendant must file pursuant to the general appeal bond statute, ORS § 19.040 (b), must cover "the value of the use and occupation of such property . . . from the time of the appeal until the delivery of the possession thereof,"

and since the landlord may bring a separate action at law for payment of back rent under ORS § 91.220.[25] Moreover, the landlord is protected against waste or damages occurring during the appeal by the § 19.040 (b) undertaking that the tenant must file if he wishes to remain in possession of the property during the appeal. The claim that the double-bond requirement operates to screen out frivolous appeals is unpersuasive, for it not only bars nonfrivolous appeals by those who are unable to post the bond but also allows meritless appeals by others who can afford the bond. The impact on FED appellants is unavoidable: if the lower court decision is affirmed, the entire double bond is forfeited; recovery is not limited to costs incurred by the appellee, rent owed, or damage suffered. No other appellant is subject to automatic assessment of unproved damages. We discern nothing in the special purposes of the FED statute or in the special characteristics of the landlord-tenant relationship to warrant this discrimination.

We do not question here reasonable procedural provisions to safeguard litigated property, cf. *National Union of Marine Cooks & Stewards* v. *Arnold,* 348 U. S. 37 (1954), or to discourage patently insubstantial appeals, if these rules are reasonably tailored to achieve these ends and if they are uniformly and nondiscriminatorily applied. Moreover, a State has broad authority to provide for the recovery of double or treble damages in cases of illegal conduct that it regards as particularly reprehensible, even though posting an appeal bond by an appellant will be doubly or triply more difficult than it otherwise would be. In the case before us, however, the

---

[25] The § 19.040 (b) undertaking does not, it is true, cover any rent that has accrued from the time the FED action is filed until the time the appeal is taken. However, the § 105.145 continuance bond filed by the tenant if the pretrial delay is over six days provides security for this rent, or such rent may be recovered as back rent in the § 91.220 action at law.

State has not sought to protect a damage award or property an appellee is rightfully entitled to because of a lower court judgment.[26] Instead, it has automatically doubled the stakes when a tenant seeks to appeal an adverse judgment in an FED action. The discrimination against the poor, who could pay their rent pending an appeal but cannot post the double bond, is particularly obvious. For them, as a practical matter, appeal is foreclosed, no matter how meritorious their case may be. The nonindigent FED appellant also is confronted by a substantial barrier to appeal faced by no other civil litigant in Oregon. The discrimination against the class of FED appellants is arbitrary and irrational, and the double-bond requirement of ORS § 105.160 violates the Equal Protection Clause.

The judgment of the District Court is

*Affirmed in part and reversed in part.*

MR. JUSTICE POWELL and MR. JUSTICE REHNQUIST took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, dissenting in part.

I

I agree with the Court that the double-bond provision in the Oregon eviction statute denies tenants who are affected by forcible entry and wrongful detainer pro-

---

[26] *Cohen* v. *Beneficial Loan Corp.*, 337 U. S. 541 (1949), is distinguishable from the instant case. There, the Court upheld a state law that required a shareholder who wished to file a shareholder's derivative suit but who owned less than 5% of the corporation's stock or whose stock was worth less than $50,000 to file as a precondition to bringing the suit a bond for the reasonable expenses, including attorney's fees, that might be incurred by defendants. The security requirement there applied to a *plaintiff* and its purpose was to protect the corporation from being injured by "strike suits" that harmed the very interests that plaintiffs claimed to be protecting.

cedures (called FED) that equal protection guaranteed against state action by the Fourteenth Amendment.

The ordinary or customary litigant who appeals must file a bond with one or more sureties covering "all damages, costs and disbursements which may be awarded against him on the appeal." [1]  To obtain a stay of execution pending the appeal the undertaking must also provide: (1) if the suit is for recovery of money or personal property (or its value), that the appellant will satisfy the claim if he loses the appeal and (2) if the judgment is for the recovery of possession of real property, for a partition or for the foreclosure of a lien, that during possession the appellant will not commit waste and that if he loses the appeal, he will pay the value of the use of the property during the appeal.

By contrast, if a tenant in an FED action appeals, he must give "in addition to the undertaking now required by law upon appeal" [2] an undertaking with two sureties for payment of twice the rental value of the premises from the commencement of the action until final judgment.

The more onerous requirement placed on tenants is said to be a guarantee that rent pending appeal will be paid. *Scales* v. *Spencer,* 246 Ore. 111, 424 P. 2d 242. Yet the general appeal statute would give that protection.[3]

---

[1] Ore. Rev. Stat. § 19.040 (1).

[2] *Id.,* § 105.160.

[3] The general appeal statute (Ore. Rev. Stat. § 19.040 (1)), however, applies only to appeals from the trial court of general jurisdiction (circuit court). FED actions may be brought in the circuit court, Ore. Rev. Stat. § 105.110, but are also within the jurisdiction of the district and justice of the peace courts—courts of limited jurisdiction. *Ibid.* A litigant may appeal from these courts to the circuit court, Ore. Rev. Stat. § 46.250, in which case trial is had *de novo,* and may stay an adverse decision pending appeal by giving an undertaking, with one or more sureties, that he will pay all costs and disbursements against him awarded on the appeal, and

It is said that the landlord deserves protection for waste or damages pending appeal. *Ibid.* But that protection is also provided under the general appeal statute.

It is said that a double-rent bond protects the landlord against possible waste or damage which occurs prior to, not during, the appeal. But the same reason would be germane to waste or damage in other suits brought to obtain possession of property. Drawing the line between the present suits to obtain possession and other suits and saddling tenants with double-rent bonds but not saddling other owners with such bonds seems to me obviously an invidious discrimination.

It is said that the double-rent bond is designed to prevent frivolous appeals taken for the sole purpose of delaying eviction as long as possible. *Ibid.* Yet frivolous appeals could as well be taken by defendants whose lien is being foreclosed and who desire to remain in possession. It is an invidious discrimination at which the Equal Protection Clause is aimed for a legislature to select one class of appellants who seek to retain possession of property and place a more onerous condition on their right to appeal than is placed on other like appellants.

In sum, the double-bond procedure is landlord legislation, not evenly weighted between his proprietary interest in the property and the rights of the tenants. Over a third of our population lives in apartments or other rented housing.[4] The home—whether rented or

---

that he will satisfy any judgment that might be entered against him by the appellate court. Ore. Rev. Stat. § 53.040.

Appellees argue that the undertaking provided for by Ore. Rev. Stat. § 53.040 is inadequate to protect landlords' rights. The answers are two. First, the landlord has the prerogative to bring suit in the circuit court, should he desire the greater protection of the general appeal statute. Second, the legislature could provide that the general appeal statute apply to FED actions brought in the district, as well as circuit, courts.

[4] 1970 Census of Housing, Advance Report HC (V. 1), p. 11.

owned—is the very heart of privacy in modern America.
MR. JUSTICE MARSHALL in *Hall* v. *Beals,* 396 U. S. 45, 52
(dissenting), spoke of the protection afforded "funda-
mental interests" when it came to classifications made
by legislatures. In that case it was the franchise. Race
is in the same category (*McLaughlin* v. *Florida,* 379
U. S. 184); so are wealth (*Douglas* v. *California,* 372
U. S. 353; *Harper* v. *Virginia Bd. of Elections,* 383 U. S.
663); procreation (*Skinner* v. *Oklahoma,* 316 U. S. 535);
and interstate travel (*Shapiro* v. *Thompson,* 394 U. S.
618). Classifications that burden, impinge, or discrim-
inate against such fundamental interests [5] are "highly
suspect." *McDonald* v. *Board of Elections,* 394 U. S.
802, 807.

Modern man's place of retreat for quiet and solace is
the home. Whether rented or owned, it is his sanctuary.
Being uprooted and put into the street is a traumatic
experience. Legislatures can, of course, protect property
interests of landlords. But when they weight the scales
as heavily as does Oregon for the landlord and against
the fundamental interest of the tenant they must be
backed by some "compelling . . . interest," *Kramer* v.
*Union School District,* 395 U. S. 621, 627. No such "com-
pelling . . . interest" underlies this statutory scheme.

The double-rent bond required of tenants, but not re-
quired of others in possession of real estate, is properly
held to be unconstitutional by reason of the Equal Pro-
tection Clause of the Fourteenth Amendment.

## II

I cannot agree, however, that the remainder of Oregon's
FED Statute satisfies the requirements of due process of
law.

---

[5] The "rational" relationship test applied to strictly economic or
business interests (*United States* v. *Maryland Savings-Share Ins.
Corp.,* 400 U. S. 4, 6; *McDonald* v. *Board of Elections,* 394 U. S.
802, 809) is not germane here.

I am satisfied that the Court properly addresses itself to the remaining questions rather than requiring appellants, who are already destitute, to start litigation all over in the Oregon state courts. The three-judge court that decided this case is a panel of distinguished Oregon lawyers and judges. Judge Goodwin came to the District Court from the Supreme Court of Oregon. Judge Solomon has practiced and sat in Portland, Oregon, for years. Judge Kilkenny was a well-known practitioner in Pendleton, Oregon, before coming to the federal bench. These men have their roots deep in Oregon law and are by no means outsiders unfamiliar with it. On local-law questions we have long deferred to federal judges who have come from law practice in a State whose local law is at issue in a federal case. See *MacGregor* v. *State Mutual Co.,* 315 U. S. 280, 281; *Huddleston* v. *Dwyer,* 322 U. S. 232, 237; *Bernhardt* v. *Polygraphic Co.,* 350 U. S. 198, 204; *Magenau* v. *Aetna Freight Lines,* 360 U. S. 273, 281 n. 2 (Frankfurter, J., dissenting).

This is a most appropriate occasion to honor that tradition. While there are occasional appropriate cases for abstention (see *Reetz* v. *Bozanich,* 397 U. S. 82), this Court's abstention doctrine that requires litigants to start all over again in a state court after having financed their course all the way to this Court is likely to exhaust only the litigants.

This all-Oregon panel said on the abstention issue:

> "It is unlikely that an application of state law would change the posture of the federal constitutional issues. No state administrative process is involved. The case has been thoroughly briefed and argued on the merits, and is presented on a clear and complete record. It is ripe for decision. Only one appeal (to the United States Supreme Court) will now be needed to settle the federal constitutional question. While the state courts are also capable of

applying the United States Constitution to a challenged state law, two levels of appeal would be needed in an F. E. D. case within the state system. A final state-court decision would still not necessarily settle the federal constitutional question.

"Closely related to the time element is economy. Cases of this sort tax both courts and counsel. Until finally resolved, these cases produce expense, uncertainty, and frustration. Delay produces no balancing benefit, either of comity or of clarity in state-federal relations."

Agreeing with that view, I come to the remaining constitutional issues.

In my view, there are defects in the Oregon procedures which go to the essence of a litigant's right of access to the courts, whether he be rich or poor, black or white.

The problem starts with Judge Wright's statement in *Javins* v. *First National Realty Corp.*, 138 U. S. App. D. C. 369, 372, 428 F. 2d 1071, 1074:

"When American city dwellers, both rich and poor, seek 'shelter' today, they seek a well known package of goods and services—a package which includes not merely walls and ceilings, but also adequate heat, light and ventilation, serviceable plumbing facilities, secure windows and doors, proper sanitation, and proper maintenance."

This vital interest that is at stake may, of course, be tested in so-called summary proceedings. But the requirements of due process apply and due process entails the right "to sue and defend in the courts," a right we have described as "the alternative of force" in an organized society. *Chambers* v. *Baltimore & Ohio R. Co.*, 207 U. S. 142, 148. In essence the question comes down to notice and an opportunity to defend. *Armstrong* v. *Manzo*, 380 U. S. 545; *Mullane* v. *Central Hanover Trust Co.*, 339 U. S. 306.

Oregon gives the tenant "not less than two or more than four days" [6] after service of summons to go to trial. If service is on a Friday, trial could be on the following Monday. There can be no continuance for more than two days "unless the defendant . . . gives an undertaking . . . with good and sufficient security" covering the rent which may accrue during the trial.[7]

For slum tenants—not to mention the middle class—this kind of summary procedure usually will mean in actuality no opportunity to be heard. Finding a lawyer in two days, acquainting him with the facts, and getting necessary witnesses make the theoretical opportunity to be heard and interpose a defense a promise of empty words. It is, indeed, a meaningless notice and opportunity to defend. The trial is likely to be held in the presence of only the judge and the landlord and the landlord's attorney.[8]

Moreover, even for tenants who have been lucky to find a lawyer, the landlord need only plead [9] and prove [10] the following items in order to win a judgment: (1) a description of the premises, (2) that the defendant is in possession of the premises, (3) that he entered upon them "with force," or unlawfully holds them "with force," [11] and (4) that the plaintiff is entitled to possession.

---

[6] Ore. Rev. Stat. § 105.135.

[7] *Id.*, § 105.140.

[8] The majority stresses the "fact" that a tenant *may* have up to six days to prepare for trial. But as of *right,* the statute guarantees only two. While various discretionary actions may result in a tenant's having the full six days, "[t]he right of a citizen to due process of law must rest upon a basis more substantial than favor or discretion." *Roller* v. *Holly,* 176 U. S. 398, 409.

[9] Ore. Rev. Stat. § 105.125.

[10] *Id.*, § 105.145.

[11] "Unlawful holding by force" is defined by Ore. Rev. Stat. § 105.115 to occur in the following circumstances: (1) if a tenant "fails or refuses to pay rent within 10 days after it is due" pursuant to a lease or agreement, (2) if he fails or refuses "to deliver posses-

86

Affirmative defenses such as the failure of the land-
lord to make repairs or that the motivation for the evic-
tion was retaliation for a report by the tenant of a viola-
tion of a housing code are apparently precluded. This
reflects the ancient notion that a lease is a conveyance
of an "estate in land," in which the respective cov-
enants—a tenant's to pay rent, the landlord's to repair—
were deemed independent of each other. This ap-
proach was appropriate in the feudal culture in which
property law evolved.[12] But this feudal notion of
landlord-tenant law—rooted in the special needs of an
agrarian society—has not been a realistic approach to

sion of the premises after being in default on payment of rent for
10 days," (3) if he remains in possession after receipt of a statutory
notice to quit (see Ore. Rev. Stat. § 105.120) and was holding under
an expired lease or was a month-to-month or year-to-year tenant,
or (4) if he "is holding contrary to any condition or covenant of
the lease" or "without any written lease or agreement."

[12] "Under feudal tenure, and in more recent times, in the setting
of a largely agrarian society, the tenant rented land primarily for
the production of crops. The fact that a building or dwelling
stood on the premises was, in the main, incidental, because the
major emphasis was on the tenant's right to till the soil for the
production of crops to supply him a livelihood. For as long as
the tenant rented the land he was the holder of an estate for years;
in effect, he was the owner for a limited term. If he wanted to
live in comfort, and if a dwelling stood on the land, it was his
business to make that dwelling livable, to see to it that the roof
was watertight, that the well was in good shape, and that whatever
sanitary facilities there were, were adequate. While he was not
to commit 'waste'—destruction of the property that would leave
it in less productive condition than when he rented it—the owner
owed him no obligation to assist in maintaining his buildings in a
livable or decent condition.

"If anything, the obligation ran the other way, because an inten-
tional or grossly negligent destruction of buildings on the premises
might be construed as waste by the tenant. Thus, from its very
beginning, the obligation to repair went hand in hand with control.
Since the landlord gave up control over the premises for the stated
term of years of the leasehold, during that term whatever the

landlord-tenant law for many years,[13] and has been replaced by what eminent authorities have described as "a predominately contractual" analysis of leasehold interests.[14] This led Judge Wright in *Javins* v. *First National Realty Corp.*, 138 U. S. App. D. C., at 373, 428 F. 2d, at 1075, to hold "that leases of urban dwelling units should be interpreted and construed like any other contract." Oregon takes the same view and treats a lease as a contract. *Wright* v. *Baumann,* 239 Ore. 410, 398 P. 2d 119; *Eggen* v. *Wetterborg,* 193 Ore. 145, 237 P. 2d 970.

The Housing Code of Portland, Oregon, has as its declared purpose the protection of the life, health, and welfare of the public and of the owners and occupants of residential buildings.[15] It forbids anyone to use or permit a building to be used in violation of its provisions. *Id.,* § 8–204.

---

obligation to repair would rest on the temporary owner, the tenant, rather than on the holder of the reversionary interest, the owner of the fee. Initially, the dependence of the obligation to repair on the capacity to control was retained and applied to non-rural housing as well." Legal Remedies for Housing Code Violations, National Commission On Urban Problems, Research Report No. 14, pp. 110–111 (1968).

[13] "The legal rules pertaining to the repair of leaseholds became wholly unreal and anachronistic with increasing urbanization during the 19th century, with the increasing reliance on multi-unit rental property, such as tenement houses, to provide shelter for the urban areas' growing industrial labor population. In an agrarian setting it made sense to require the tenant to keep in good repair an entire dwelling house he had rented from an owner. On the other hand, to require a relatively transient tenant to assume the obligation of repair in a multi-unit building or in a tenement house with respect to his rooms and with respect to plumbing, heating, and other fixtures that were interconnected with other parts and fixtures in the building made no sense at all." *Id.,* at 111–112.

[14] R. Powell & P. Rohan, Real Property 179 (1967).

[15] Housing Code § 8–102.

88

We do not know what Oregon would hold if a lease in violation of a housing code was before it in an FED case. But if the lease is a contract, then the opportunity to be heard would certainly embrace the issue of legality, if due process is to have any real significance. Oregon's statutory FED scheme is plainly to protect landlords against loss of rental income during lengthy litigation. See *Menefee Lumber Co.* v. *Abrams,* 138 Ore. 263, 5 P. 2d 709; *Friedenthal* v. *Thompson,* 146 Ore. 640, 31 P. 2d 643. But that is no justification for denial to tenants of due process, as there are other less drastic devices for protecting the landlord. Judge Wright in the *Javins* case, 138 U. S. App. D. C., at 381 n. 67, 428 F. 2d, at 1083 n. 67, proposed "an excellent protective procedure" in the form of a requirement that the tenant, who raises an affirmative defense based on housing code violations or other discriminatory landlord practices, pay rent into court as it became due.[16] See also *Bell* v. *Tsintolas Realty Co.,* 139 U. S. App. D. C. 101, 430 F. 2d 474. The District Court in the present case employed a similar procedure.

Appellees assert that the affirmative defenses mentioned are not relevant to the issues posed under Oregon's FED Act. They represent to us that the Oregon judges at the trial level have usually held that such defenses are not relevant, though the Oregon Supreme Court has not considered the question. What Oregon will hold or should hold is not the issue. Since, however, Oregon holds that a lease is a contract, all defenses

---

[16] Oregon's continuance bond, Ore. Rev. Stat. § 105.140, serves the same function:

"No continuance shall be granted for a longer period than two days unless the defendant applying therefor gives an undertaking to the adverse party with good and sufficient security, to be approved by the court, conditioned for the payment of the rent that may accrue if judgment is rendered against the defendant."

relevant to its legality and its actual operation would seem to be within the ambit of the opportunity to be heard that is embraced within the concept of due process, at least until the issue has been resolved to the contrary.

The Court suggests that landlord-tenant law raises no federal questions. This is not quite so clear to me. We have held that the right to complain to public authorities is constitutionally protected. *In re Quarles,* 158 U. S. 532. If a defendant in an FED action is denied the right to assert as a defense the claim that he is being evicted, not for the nonpayment of rent, but because he exercised his constitutional right to complain to public officials about the disrepair of his apartment, a substantial federal question would be presented. See *Edwards* v. *Habib,* 130 U. S. App. D. C. 126, 129–137, 397 F. 2d 687, 690–698 (1968).

The Court also implies that to find for appellants in this case, we would have to hold, as a matter of constitutional law, that a lease is required to be interpreted as an ordinary contract. But this is not at all necessary. Oregon has already adopted the modern, contractual view of leasehold analysis. The issue that confronts the Court is not whether such a view is constitutionally compelled, but whether, once Oregon has gone this far as a matter of state law, the requirements of due process permit a restriction of contract-type defenses in an FED action. Cf. *Shapiro* v. *Thompson,* 394 U. S., at 627 n. 6; *Sherbert* v. *Verner,* 374 U. S. 398, 404–406.

Normally a State may bifurcate trials, deciding, say, the right to possession in one suit and the right to damages in another. See *Bianchi* v. *Morales,* 262 U. S. 170; *American Surety Co.* v. *Baldwin,* 287 U. S. 156.

But where the right is so fundamental as the tenant's claim to his home, the requirements of due process should be more embracing. In the setting of modern urban

life, the home, even though it be in the slums, is where man's roots are. To put him into the street when the slum landlord, not the slum tenant, is the real culprit deprives the tenant of a fundamental right without any real opportunity to defend. Then he loses the essence of the controversy, being given only empty promises that somehow, somewhere, someone may allow him to litigate the basic question in the case.

*Bianchi* v. *Morales, supra,* which sanctioned the bifurcated trial in the rural setting of Puerto Rico, where the contest was between mortgagor and mortgagee, would be an insufferable addition to the law of the modern ghetto.

A judgment obtained by the landlord, whether by default or otherwise, gives him the right to levy on the goods of the tenant to recover the costs and disbursements of the suit.[17]   Moreover, any past waste or damages, which are covered by the appeal bond, are not an issue in litigation in FED cases. As noted, the issues in Oregon FED cases are limited and the proceedings summary. Making the tenant liable for past waste or damage through the device of an appeal bond when he has no real opportunity to defend is a manifest denial of due process.

I dissent from an affirmance of this judgment.

Mr. Justice Brennan, dissenting in part.

In my view the District Court erred in declining to apply the doctrine of abstention with respect to the availability of defenses in FED actions.*   The issue

---

[17] Ore. Rev. Stat. § 105.155.

*Abstention on the double-bond provision is not required in light of the Oregon Supreme Court's decision in *Scales* v. *Spencer,* 246 Ore. 111, 424 P. 2d 242 (1967). I agree with the Court that this provision violates the Equal Protection Clause.

is whether Oregon would violate the Fourteenth Amendment if its substantive law in some circumstances recognized a tenant's rights to withhold rent and retain possession based on the landlord's breach of duty to maintain the premises, but its procedural law would not permit assertion of those rights in defense of an FED action. This constitutional issue is ripe for decision if, and only if, Oregon law (1) recognizes substantive rights of the tenant based on the landlord's breach of duty; (2) recognizes, because of such breach, that a tenant may remain in possession while withholding rent during the term or may hold over after expiration of the term, and (3) excludes the assertion of these rights to continued possession as a defense to an FED action.

The Court's opinion exposes the fallacy of the District Court's conclusion that Oregon law is "clear" and that "[i]t is unlikely that an application of state law would change the posture of the federal constitutional issues." App. 73. For the Court cites Oregon decisions that have recognized certain equitable defenses in FED actions, *ante,* at 66 n. 11, and can only conjecture that the defenses appellants sought to raise are "apparently" not in this category. We cannot confidently say, therefore, how the Oregon courts would treat appellants' defenses, if available at all, when asserted in an FED suit, or how, if those defenses are available in FED suits, the Oregon courts would apply the requirement of a trial no later than six days after service of process. Clearly, therefore, the Oregon law is susceptible of a "construction by the state courts that would avoid or modify the constitutional question." *Zwickler* v. *Koota,* 389 U. S. 241, 249 (1967); *Reetz* v. *Bozanich,* 397 U. S. 82 (1970). In these circumstances the District Court should have remitted appellants to the Oregon courts for an authoritative interpretation of Oregon law in

these respects before adjudicating appellants' plainly nonfrivolous constitutional attacks upon the FED Statute.

I would vacate the judgment of dismissal and remand with direction to the District Court (1) to enter judgment declaring that the double-bond requirement of Ore. Rev. Stat. § 105.160 violates the Equal Protection Clause, and (2) to retain jurisdiction and reinstate the temporary restraining order conditioned on the payment of rent into the escrow account, provided appellants, within a time fixed by the District Court, institute appropriate proceedings in the Oregon courts to obtain an authoritative interpretation of the FED Statute with respect to defenses available in actions thereunder.