OPINION OF THE COURT
Martin Evans, J.
Petitioner, in this article 78 proceeding, seeks judgment declaring sections D46-15.0 and D46-17.0 of the Adminis *94 trative Code of the City of New York unconstitutional; annulling certain warrants, restraining notices and notices of sale, in that they are claimed to take property without due process of law; annulling a notice of postseizure hearing as beyond the authority and power of the respondent; and seeks other related relief including a hearing to determine the truth of the basic facts on which the actions of the respondent were predicated.
Petitioner is a licensed cigarette wholesaler, and also has been appointed for the convenience of the city, as agent to affix tax stamps to cigarette packages. For this latter service, petitioner receives compensation from the city. (Administrative Code, § D46-4.0, subd b.)
On September 29, 1980, the respondent, on the basis of information that the tax stamps which had been affixed to 2,300 cartons of cigarettes in petitioner’s possession have forged tax-meter imprints (placed thereon by the use of a Pitney-Bowes meter) seized the cigarettes and in addition seized three tax meters and all tax stamps in the possession of petitioner. Respondent, at the same time, made the determination of deficiency tax assessments in the respective amounts of $49,855.68 and $312,090. He filed a tax warrant in the lesser amount in the office of the court clerk on September 29 and in the greater amount on September 30. He restrained petitioner’s bank accounts and demanded their immediate payment to respondent. He caused his warrant officer, on the basis of the filed warrants, to levy upon and seize all of the corporate property of petitioner, and, by a notice of sale, prepared to sell all the corporate property on October 16, 1980 to satisfy the tax warrants. He then offered petitioner a hearing, to be held on October 7, 1980 as to propriety of the seizure of the cigarettes.
The respondent also suspended petitioner as a tax agent, and gave petitioner notice that it was entitled to a hearing as to the suspension.
With respect to the seizure of the cigarettes, respondent acted under the provisions of section D46-17.0 of the Administrative Code, which grants him power to seize cigarettes upon which the tax has not been paid. Title is *95 deemed immediately forfeited to the city, which may thereafter sell them.
There is no comparable provision allowing the respondent to seize the postage meters and tax stamps, which otherwise appear to be property of the petitioner. Seizure of these appears to have been made under that section. However, the acts of taking possession of the other real and personal property of petitioner, was apparently pursued under the warrants which were filed on September 29 and 30, which became judgments when filed. (See Administrative Code, §§ D46-11.0, D46-15.0.)
Petitioner’s position, simply stated, is that any acts by respondent under these provisions are invalid because the Administrative Code fails to make any provision for any hearing to be afforded petitioner, and thus allows the taking of petitioner’s property without the process of law.
Petitioner also argues that, while the respondent did in fact offer a hearing to petitioner, as to the seizure of the cigarettes and as to the termination of the status of petitioner as an agent to affix stamps, this offer is insufficient to satisfy constitutional requirements in that it is not required by any statute or rule, it is offered gratuitously and without the predetermination of any rules of procedure or other standards, all of which, argues petitioner, renders the hearing insufficient to satisfy the requirements of due process.
Respondent claims that it had the right to act by seizure in the expeditious manner it used; that petitioner’s sole remedy is found in sections D46-11.0 and D46-12.0 of the Administrative Code, and that respondent had the right to terminate the tax agency at will.
For proper analysis, each of the various contentions will be discussed separately.
I
The suspension of petitioner’s agency was a valid act by respondent.
Both the State and the city impose taxes upon the sale of cigarettes; the State, under article 20 of the Tax Law and the city under title D of its Administrative Code. The tax is paid through the purchase, by agents, of stamps. These are *96 required to be affixed to packages of cigarettes by the agents. The State, under section 472 of the Tax Law, and the city, under subdivision b of section D46-4.0 of the Administrative Code may appoint tax agents and may fix their remuneration. Co-operation between the State and the city, in the joint administration of their respective cigarette taxes, is permitted under section 475 of the Tax Law.
Petitioner was appointed for this purpose by both the State and the city, each acting separately.
By letter dated October 2, 1980, respondent notified petitioner that it had suspended petitioner’s appointment as agent, pending a determination of the revocation hearing of petitioner’s wholesale dealer’s license and notified petitioner that it had the right to a hearing respecting the suspension of the agency appointment. (So far as the court can determine, no other reference to the pending determination of the revocation of petitioner’s wholesale dealer’s license has been made in the papers submitted on this proceeding, nor does that appear to bé otherwise relevant to this proceeding.)
The appointment of petitioner as an agent for the purpose of purchasing, affixing and canceling tax stamps appears to have been a matter of convenience both to the city and to petitioner. It was not necessary; the city could well have appointed anyone to perform that task.
Petitioner argues that his status as agent amounted to a franchise or license, which cannot be suspended or revoked without a hearing. In this, it is mistaken. A license is a right or permission to carry on a business or to do an act which, without such license, would be illegal. (53 CJS, Licenses, § 1, p 445.) A franchise is similar to a license, in that it is a grant of power, or permission, to do certain acts which could not be done without the franchise. The business carried on, or the acts done, are essentially for the economic benefit of the licensee or franchisee, who is considered a principal in his relationship to third persons.
An agent, on the other hand, performs acts for its principal. The distinction is usually clear, as it is in this case. By definition, by analysis of the acts to be performed and of *97 the method of remuneration, and of the control exercised by the grantor of the status, petitioner is no more than an agent. As such, it is well settled that an agency without a term of duration is terminable at will. A principal has the right at any time to revoke the authority of an agent to represent the principal. (Conrad v Golden, 275 App Div 946.)
The power to revoke, includes the lesser power to suspend. That respondent gave petitioner the opportunity to have a hearing with respect to that was an act of grace; not a requirement compelled by law.
II
The seizure, and the proposed sale of the unstamped cigarettes was an invalid act by respondent.
These cigarettes were the property of petitioner. They were seized under section D46-17.0 of the Administrative Code which, in pertinent part provides that “Whenever the director of finance *** shall discover any cigarettes, subject to any tax provided by this title, and upon which the tax has not been paid or the stamps affixed as herein required, he is hereby authorized *** to seize and take possession of such cigarettes * * * which *** shall thereupon be deemed to be forfeited to the city. The director of finance may, within a reasonable time thereafter, by a public notice at least five days before the day of the sale, sell such forfeited cigarettes *** at public sale and pay the proceeds into the treasury of this city.”
The seizing of the cigarettes took place on September 29, 1980. Under the provisions of section D46-17.0 of the Administrative Code it was possible for respondent to sell the cigarettes on October 5. (Whether respondent has sold those cigarettes does not appear from the submitted papers, although it is probable that they have not.)
Respondent offered petitioner, by letter dated October 1, 1980 a “post seizure hearing” to be held on October 7,1980 to determine the propriety of the seizure. This letter is signed by one who purports to be the Chief of the Hearing Division, from which it might be inferred that there is some authority under which a hearing may be held.
*98 The authority and power of respondent as Commissioner of the Department of Finance, are derived from chapter 58 of the New York City Charter. Pertinent here is subdivision 2 of section 1504 of the New York City Charter which, with respect to excise and nonproperty taxes (which includes the cigarette tax) gives the department the power, inter alla, “to make determinations in contested cases. For such purposes, the commissioner or his delegate may hold hearings and administer oaths.”
But there does not appear to be any statute requiring such a hearing; nor does any rule of the Department of Finance, made under its rule-making powers, subdivision 1 of section D46-8.0, seem to exist with respect to such hearing. The copies of the motion are noticeably silent in that respect.
Since there is no method provided to petitioner to obtain a determination, except at the whim of the respondent and even then, at a time when irreparable damage may have been done, the basic requirements of due process do not exist. (See Treacher’s Fish & Chips v New York State Tax Comm., 69 AD2d 550, 555.)
III
The seizure of the meters used for stamping the packages of cigarettes is entirely without authority under any section of the Administrative Code. The section relied upon by respondent, D46-17.0, refers solely to cigarettes. These meters, owned by a third party and leased to petitioner, were not subject to such seizure. That the meters may have been evidence of the alleged crime of forgery gives no right to respondent to seize them. No judicial warrant has been issued; no arrest has been made, and the acts of respondent in that regard are completely beyond his authority.
IV
The determination by respondent of taxes due was within the authority of the respondent, under section D4611.0 of the Administrative Code. Whether the factors on which the amount was based were properly considered or whether the amount determined was arbitrarily chosen, may be determined upon a hearing.
*99 The respondent, upon making that determination under section D46-15.0 of the Administrative Code, if he was satisfied in his discretion that the taxpayer was about to cease business, leave the State, or remove or dissipate the assets out of which the tax might be satisfied, and that the tax will not be paid when due, has the right to issue an immediate warrant. If, however, he was not satisfied as to the existence of those factors, his remedy to collect the tax is the bringing of an ordinary action.
In this case, the respondent did issue an immediate warrant, filed it as a judgment and proceeded to seize all corporate assets by way of a levy. Whether or not the respondent exercised his discretion on the basis of the requirements of the code does not appear in the papers before me; but petitioner has not raised that issue.
A hearing prior to seizure is not required, particularly in the case of tax collection. The prompt collection of revenue by the government is of extremely high importance to its efficient administration and there is no constitutional impediment to seizure, for that purpose, provided that the taxpayer is given an opportunity, consistent with the requirements of due process, to contest the amount of tax.
Section D46-11.0 of the Administrative Code purports to provide such due process and, in the opinion of the court, it does so, with one exception.
It provides that “Notice of such determination shall be given to the person liable for the payment of the tax. Such determination shall finally and irrevocably fix the tax unless the person against whom it is assessed shall, within thirty days of the giving of such notice, apply to the director of finance for a hearing on such determination, or unless the director of finance shall of his own motion redetermine such tax. After such hearing the director of finance shall give notice of his decision to the person liable for the tax.”
The section continues as follows: “The determination of the director of finance shall be reviewable for error, illegality, unconstitutionality or any other reason whatsoever by a proceeding * * * instituted within thirty days after the giving of the notice of such determination.”
*100 Up to that point, due process has been afforded. A prompt postseizure hearing, subject to judicial review, is made available. However, the section continues with a limitation which effectively deprives petitioner of the opportunity to obtain any judicial review. “Such proceeding shall not be instituted unless the amount of any tax sought to be reviewed with interest and penalties thereon, if any, shall have first been deposited with the director of finance and an undertaking filed with the director of finance in such amount and with such sureties as a justice of the supreme court shall approve, to the effect that if such proceeding be dismissed or the tax confirmed, the petitioner will pay all costs and charges which may accrue in the prosecution of the proceeding.”
The imposition of this condition of full payment of the tax, prior to the allowance of judicial review of the propriety of the determination after hearing, is tantamount to the preclusion of the right of due process.
The rights of respondent to collect its taxes are maintained by his power to levy and seize assets; the requirement of full payment before resort may be had to the courts does not serve any further governmental interests.
Since the only method open to petitioner to review this tax determination is through a proceeding in our courts, due process requires that this not be unduly burdened. (See Boddie v Connecticut, 401 US 371; cf. Lindsey v Normet, 405 US 56, 74-79.)
This is particularly egregious, when, as seen in this case, the respondent, after making the determination of the tax, caused a warrant to be issued and filed, and then levied upon and seized all of the property and assets of petitioner, thereby rendering petitioner unable, without access to funds, and having no available assets, to pay any part of the tax.
Invalidation of the entire statutory scheme, however, is not required. This court has the power to disregard the provisions of a statute which are unconstitutional, if it is not so much a part of the statutory scheme that its extirpation will disrupt the balance or otherwise interfere with the properly exercised legislative acts.
*101 Here, therefore, granting petitioner access to the courts for a review of the determination, without the imposition of the improper burden, will satisfy the demands of due process.
If petitioner desires a hearing as to the propriety of the determination of the two tax amounts, it may provide for that in the order to be settled hereon.