GOLDIE'S BOOKSTORE, INC., et al., Plaintiffs,

v.

The SUPERIOR COURT OF the STATE OF CALIFORNIA, et al., Defendants.

No. Civ. S–83–825 RAR.

United States District Court, E.D. California.

June 13, 1984.

Jay Allen Eisen, Sacramento, Cal., for plaintiffs.

Michael A. Duncheon, Hanson, Bridgett, Marcus, Vlahos & Stromberg, San Francisco, Cal., L.B. Elam, County Counsel, Anthony L. Wright, Deputy County Counsel, Sacramento, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

RAMIREZ, District Judge.

The matter is presently before the Court on the parties' cross-motions for summary judgment. The substantive issue raised by these motions is the constitutionality of Section 1176(a) of the California Code of Civil Procedure, which provides for discretionary stays during the pendency of appeals from unlawful detainer judgments. Although the Court does not find that Section 1176(a) is unconstitutional on its face, it finds that it is unconstitutional as applied. Accordingly, the Court DENIES defendants' motion for summary judgment, and GRANTS plaintiffs' cross-motion.

### FACTUAL BACKGROUND

This lawsuit arises out of a dispute as to the right to possess a parcel of commercial real estate located at 201 North "B" Street in Sacramento, California. This parcel is presently owned by defendants Richard and Emily L. Levin. In 1971 the property was leased by the Levins' predecessors-in-interest to plaintiff Foreign Auto Body Specialists (hereinafter "FABS"). Thereafter FABS sublet a portion of the property to plaintiffs Goldie's Bookstores and Jesse Walker, the latter being the Secretary/Treasurer of the bookstore. In February 1983 the Levin defendants gave formal notice of the termination of the tenancy, effective March 31, 1983. When the tenants failed to vacate, the Levins commenced an unlawful detainer action against them in Sacramento Superior Court, said case bearing case No. 310702. In response thereto, the tenants filed an answer which raised various affirmative defenses, including a claim for fraud which was based on the allegation that the landlord had failed to honor a right of first refusal clause in the lease.

On June 30, 1983, the Superior Court rejected the affirmative defenses of the tenants and awarded judgment for the Levins, which was formally entered on July 14, 1983. Also on June 30, 1983 the ten-ants applied for an order fixing the amount of an undertaking and staying enforcement of the judgment pending appeal pursuant to CCP § 917.4. On July 15, 1983, the Superior Court issued a minute order which denied the application without comment but which granted a ten (10) day stay of execution. Four days later, the tenants filed a formal notice of appeal from the Judgment.

### PROCEDURAL BACKGROUND

On July 22, 1983, plaintiffs herein filed a civil rights action pursuant to 42 U.S.C. § 1983 which alleges that CCP § 1176(a) violates the Equal Protection Clause of the United States Constitution. Named as defendants are: Emily L. and Richard Levin; the Superior Court of Sacramento County; Joyce Russell Smith, Clerk of the Superior Court of Sacramento County; Robbie Waters, Sheriff of Sacramento County; and Lee Ghilarducci, Marshall of Sacramento County.[1] The complaint seeks a declaratory judgment plus temporary, preliminary, and permanent injunctive relief.

On July 27, 1983, this Court approved a stipulation entered into by counsel for plaintiffs and the Levin defendants which restrained the Levins from executing on their Judgment pending adjudication of plaintiffs' motion for a preliminary injunction. On September 13, 1983, a hearing was held on plaintiffs' motion and on the Levin defendants' cross-motion to dismiss. In a written order filed October 21, 1983, this Court denied defendants' motion and granted plaintiffs' motion for preliminary relief. The Court found that plaintiffs' constitutional challenge presented a serious question meriting litigation and that plaintiffs had established that the balance of hardships tipped sharply in their favor. Defendants filed a timely interlocutory appeal from the issuance of the preliminary injunction, which apparently is still pending before the Ninth Circuit Court of Appeals.

Thereafter, the Levin defendants moved for summary judgment. Pursuant to a stipulation of counsel, plaintiffs were deemed to have filed a cross-motion for

---

**1.** Aside from filing an answer, the official defendants have not participated in the lawsuit.

summary judgment. Both motions came on regularly for hearing on January 23, 1984. Jay Allen Eisen, Esq., appeared on behalf of plaintiffs. Winslow Christian, Esq., appeared on behalf of the Levin defendants. · After oral argument, the matter was taken under submission.

## THRESHOLD ISSUES

■ At the outset the Court finds that disposition of this case by cross-motions for summary judgment is entirely proper. The issue raised herein is a pure question of law as to which there are no material issues of fact in dispute. F.R.Civ.P. 56(c).

■ The Court also finds that jurisdiction is properly predicated on the provisions of 28 U.S.C. § 1343(a)(3), this being a § 1983 action which raises a serious constitutional question. *Cf., Keniston v. Roberts,* 717 F.2d 1295, 1298 (9th Cir.1983). Both in personam jurisdiction and venue appear to be proper; in any event any possible objection thereto has been waived on account of its not having been timely raised. F.R.Civ.P. 12(h).

■ Finally, this Court rejects defendants' argument that it should abstain from adjudicating the constitutional issue under the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 669 (1971). As recently explicated by the Ninth Circuit in *Miofsky v. Superior Court,* 703 F.2d 332, 338 (1983), the *Younger* doctrine carves out a very limited exception to "the fundamental principle that federal courts have an 'unflagging obligation' to exercise their jurisdiction". *Id.* at 338. District courts should decline to adjudicate federal constitutional issues only where the ongo-

ing state civil proceeding implicates "vital state interests". There being no "vital state interests" of the kind envisioned by *Miofsky* implicated here, this Court finds that the *Younger* abstention doctrine is inapplicable.[2]

## DISCUSSION

The issue in this case is whether the discretionary stay provision contained in CCP § 1176(a) violates the Equal Protection Clause. While this particular issue appears to be one of first impression[3], this Court does not write on an entirely clean slate. In *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), the Supreme Court reviewed a constitutional challenge to three aspects of Oregon's Forcible Entry and Wrongful Detainer Statute (hereinafter "FED"): its limitation on litigable issues, its expedited hearing requirement, and its double-bond provision. The *Lindsey* plaintiffs argued that the first two provisions violated the Due Process Clause and that all three violated the Equal Protection Clause.

The majority opinion rejected the Due Process challenge in its entirety as well as the Equal Protection argument with regard to the first two provisions. However, it did find that the double-bond requirement violated the Equal Protection Clause. The Equal Protection analysis of all three issues is informative for present purposes.

After deciding that the "rational-relation" test was the applicable test, the Court determined that the provisions for an early trial and simplification of issues were closely related to the state's legitimate goal of achieving prompt and peaceful resolution

---

**2.** Although the parties do not discuss the *Pullman* abstention doctrine, the Court finds that this doctrine is likewise inapplicable. This abstention doctrine, which is derived from *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), directs federal district courts to decline to adjudicate federal constitutional questions where a state court ruling on an issue of state law might obviate the need for federal constitutional adjudication. Because there is no issue of state law which would moot the federal issue, *Pullman* abstention is unwarranted. *Cf., Lindsey v. Nor-*

*met,* 405 U.S. 56, 62, n. 5, 92 S.Ct. 862, 868, n. 5, 31 L.Ed.2d 36 (1972).

**3.** It is true that this issue was addressed in an unreported opinion by Judge Karlton. *Sonoma Investment Corp. v. Superior Court, et al.,* No. Civ.S–80–853 LKK (E.D.Cal. Sept. 8, 1981). There Judge Karlton issued a preliminary injunction upon a finding that the issue was a serious question meriting litigation. However, the case was settled before Judge Karlton had an opportunity to rule on the merits of the plaintiff's constitutional claim.

of disputes over possession of real property. The Court found, however, the opposite to be true with regard to the double-bond provision.

■ Under Oregon law, every person who appeals from a judgment for recovery of real property must provide an undertaking for all damages, costs, and disbursements which may be awarded against him on appeal, plus for any waste and accrued rentals. Ore.R.S. § 19.040(1)(b). By contrast, any person who appeals an unlawful detainer judgment must supply, in addition to the undertaking specified in § 19.-040(1)(b), a bond for twice the rental value of the real property from the commencement of the action until final judgment. Ore.R.S. § 105.160. Should judgment be affirmed, the bond is automatically forfeited without proof of actual damage. *Preister v. Thrall*, 229 Or. 184, 187, 349 P.2d 866, 365 P.2d 1050 (1960).

The Supreme Court struck down this double-bond provision because it heavily burdened the statutory right to appeal without furthering any permissible state purpose. The provision did not advance the legitimate purpose of protecting the landlord against loss of rent or damage to premises because this purpose was adequately served by the undertaking required by § 19.040(1)(b). Nor did the double bond provision serve the legitimate purpose of screening out frivolous appeals. This provision "not only bars nonfrivolous appeals by those who are unable to post the bond but also allows meritless appeals by others who can afford the bond". *Lindsey*, 405 U.S. at 78, 92 S.Ct. at 876.

Having determined that the double-bond provision was unconstitutional, the Court warned in *dicta* that not all burdens on appeals in unlawful detainer actions are invalid.

We do not question here reasonable procedural provisions to safeguard litigated property ... or to discourage patently insubstantial appeals, if these rules are reasonably tailored to serve these ends and if they are uniformly and nondiscriminatorily applied.

*Id.*

Since *Lindsey*, lower courts have repeatedly struck down unjustified burdens on appeals. However, the overwhelming majority of reported decisions concern unduly harsh bond requirements. *Saharoff v. Stone*, 638 F.2d 90 (9th Cir.1980) (double-bond requirement of the Commodity Exchange Act of 1936, 7 U.S.C. § 18(g)); *O'Day v. George Arakelian Farms, Inc.*, 536 F.2d 856 (9th Cir.1976) (double-bond requirement of the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. § 499g(c)); *Compton v. Naylor*, 392 F.Supp. 575 (N.D.Tex.1975) (unsuccessful appellant in a FED action subjected to unlimited attorneys fees, damages, and costs); *Blair v. Stump*, 127 Ariz. 7, 617 P.2d 791 (Ariz.App.1980) (unlawful detainer appellants from Justice courts obliged to post larger bond than unlawful detainer appellants from Superior courts).

Only one reported decision has ruled upon a stay pending appeal, *Usher v. Water Ins. & Realty Co.*, 438 F.Supp. 1215 (W.D.N.C.1977), and the stay provision there was considered in conjunction with two onerous bond requirements. While the court did find that the combined effect of the three requirements was unconstitutional, it did not consider whether the absence of a right to a stay pending appeal, standing alone, was constitutionally invalid. Thus the issue of the constitutionality of a discretionary stay provision such as the one presently under attack constitutes a novel question.

Plaintiffs' assertion here that California discriminates against appellants in unlawful detainer actions is undeniably correct.[4]

---

4. In contrast to California, the rule prevailing in other major states is that unlawful detainer appellants, like other civil appellants, are entitled to a stay pending appeal, provided they post an adequate bond. *See, e.g.,* Ariz.Rev.Stat. § 12–1182; *Tovar v. Superior Court,* 132 Ariz. 549,

647 P.2d 1147 (1982); Ill.Rev.Stat. ch. 57 § 19; N.Y.Civ.Prac.Law § 5519(a)(6); *Mountbatten Equities v. Tabard Press Corp.,* 87 Misc.2d 861, 386 N.Y.S.2d 785 (1976); *Oleck v. Pearlman,* 49 Misc.2d 202, 267 N.Y.S.2d 76 (1966); Wash.Rev. Code § 59.12.200.

Appellants in all actions pertaining to possession of real property, other than unlawful detainer actions, are entitled to a stay pending appeal as a matter of right, upon submission of a sufficient undertaking. CCP § 917.4.[5] Appellants in unlawful detainer actions, on the other hand, have no such right. Unlawful detainer appellants are subject to Section 1176(a) which declares:

> An appeal taken by the defendant shall not stay proceedings upon the judgment unless the judge before whom the same was rendered so directs.

Thus, the question is whether this special burden is reasonably tailored to furthering a legitimate state interest. The only justification for the discretionary stay provision proffered by the defendants is that it is rationally related to the recognized purpose of providing an adequate, expeditious and summary process for recovery of property wrongfully withheld. *Mobil Oil Corp. v. Superior Court,* 79 Cal.App.3d 486, 494, 145 Cal.Rptr. 17, 21 (1978); *Childs v. Eltinge,* 29 Cal.App.3d 843, 853, 105 Cal.Rptr. 864, 871 (1973). With this argument, the Court cannot agree.

While the interest in summary adjudication might be rationally related to streamlined appellate procedures, *Hamilton Corp. v. Alexander,* 53 Ill.2d 175, 290 N.E.2d 589 (1972) or even absolute preclusion of appellate review, it bears no rational relation to discretionary stays. Implicit in the discretionary stay provision is the principle that delaying the date of repossession is proper during the pendency of some but not all appeals. This principle cannot be reconciled with the principle of summary adjudication.

The constitutional inquiry, however, does not cease at this point. Because a statute which needs only to survive the rational relation test is presumed to be constitutional, the reviewing tribunal is obliged to uphold it so long as the Court can ascertain or even hypothesize a legitimate purpose to which it is related. *Brandwein v. Calif. Bd. of Osteopathic Ex'rs.,* 708 F.2d 1466 (9th Cir.1983).

Unfortunately, it is well nigh impossible to divine the actual purpose which the Legislature intended Section 1176(a) to serve. The text gives no clue as to its rationale. Because the statute was enacted in 1872, more than a century ago, there is no known legislative history. Moreover, the statute's subsequent history is not illuminating. Although the statute has been amended on three occasions, these amendments have not affected the element of discretion.

This Court is thus forced to hypothesize a justification for this discretionary stay. As explained in *Lindsey,* a provision which is reasonably tailored toward discouraging patently insubstantial appeals does not run afoul of the Equal Protection Clause. The question therefore presented is whether the discretionary stay provision serves this end.

Plaintiffs quite properly do not deny that a carefully delimited stay statute could discourage frivolous appeals. However, they contend that Section 1176(a) vests *unfettered* discretion in the trial court and thereby permits the trial court to deny a stay pending appeal for reasons unrelated to the merits of the appeal. They correctly point out that on its face Section 1176(a) does not articulate any factors governing the exercise of discretion. They also argue that the appellate process provides no effective

---

5. Section 917.4 provides in pertinent part:

The perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order appealed from directs the sale, conveyance, or delivery of possession of real property which is in the possession or control of the appellant or the party ordered to sell, convey or delivery possession of the property, unless an undertaking in a sum fixed by the trial court is given that the appellant or party ordered to sell, convey

or deliver possession of the property will not commit or suffer to be committed any waste thereon and that if the judgment or order appealed from is affirmed, or the appeal is withdrawn or dismissed, the appellant shall pay the damage suffered by the waste and the value of the use and occupancy of the property, or the part of it as to which the judgment or order is affirmed, from the time of the taking of the appeal until the delivery of the possession of the property.

check on the trial court's decisionmaking. The decision may be overturned on appeal only for an abuse of discretion, *Plummer v. Agoure,* 20 Cal.App. 319, 128 P. 1014 (1912), and California appellate courts have historically held that they have no power to overturn a stay denial by way of an extraordinary writ. *See Mehr v. Superior Court,* 139 Cal.App.3d 1044, 1048–49, n. 3, 189 Cal.Rptr. 138 (1983), and cases cited therein.

Plaintiffs' argument, however, fails to take adequate account of the change wrought by the *Mehr* decision. Petitioners in *Mehr* were defendants in an unlawful detainer proceeding brought to evict them from their home. The *Mehr* petitioners unsuccessfully defended the eviction proceeding on the ground that plaintiff had obtained title to the home by fraud. After the Superior Court denied the Mehrs' application for a stay pending appeal, the Mehrs petitioned the District Court of Appeal (D.C.A.) for a writ of mandate. The D.C.A. initially denied the petition on the basis of a long line of precedent which held that appellate courts had no power to grant the requested relief. The California Supreme Court, however, entered a temporary stay of execution and then transferred the case back to the D.C.A. with instruction to issue an alternative writ of mandate.

Upon reconsideration, the D.C.A. reviewed the merits of the petition as follows:

> It appears from the record, therefore, that the Mehrs have shown that a substantial question will be raised on appeal; that they will suffer irreparable injury by an eviction from their home prior to the determination of the appeal; and that Finnegan [the unlawful detainer plaintiff] will not be sorely prejudiced if protected in the manner proposed. Under the circumstances, we conclude that respondent court abused its discretion in denying the Mehrs' motion for a stay of execution of the judgment pending determination of their appeal.

*Id.* at 1050, 189 Cal.Rptr. at 141. Accordingly, the D.C.A. issued the writ of mandate with instructions to the Superior Court to issue a stay upon such conditions as it deems proper.

The significance of *Mehr* is two-fold. First, it reversed long-standing precedent that extraordinary writs are not available to Section 1176(a) appellants. Second, it implicitly formulated the following test for the issuance of a Section 1176(a) stay: if the moving party shows that it will raise a substantial question on appeal, that it will suffer irreparable injury in the absence of a stay, and that the non-moving party will not be irreparably injured by its issuance, then the moving party is entitled to a stay, subject to such conditions as the Superior Court may deem just.

This Court cannot find this test constitutionally defective. It properly confines the scope of the trial court's discretion to consideration of constitutionally permissible factors, such as the merits of the appeal and the relative burdens on the litigants which a stay would impose. It forbids the trial court from utilizing Section 1176(a) for the impermissible purpose of discriminating against unlawful detainer appellants without regard to the merits of their appeal.

In finding that Section 1176(a) withstands constitutional scrutiny in light of the narrowing construction on the scope of discretion imposed by *Mehr,* this Court does not place its stamp of approval on Section 1176(a) practice prior to *Mehr.* As was made clear by the D.C.A.'s initial consideration of the Mehrs' petition, the then prevailing rule was that relief by way of an extraordinary writ was impossible and relief by way of an appeal for an abuse of discretion was virtually non-existent.[6] This Court cannot ignore the very real possibility that prior to *Mehr,* trial courts employed Section 1176(a) for unconstitutional ends.

---

**6.** This Court has been unable to find a single reported decision in which the trial court's denial of a stay was found to be an abuse of discretion, and the parties to this litigation have not cited this Court to any such authority.

Surely a more narrowly drafted statute would be preferable. This Court, however, does not sit in the capacity of a quasi-legislature. Where as here, a state appellate tribunal has imposed a narrowing construction on an otherwise overbroad statute, the statute is not facially invalid.[7]

This Court finds, however, that Section 1176(a) is unconstitutional as applied to the plaintiffs herein. Their appeal is not frivolous. Because the Superior Court unfortunately did not make any written factual findings on the fraud defense, this Court cannot assess the tenants' probability of success on appeal with much precision. Nevertheless, this Court does note that certain facts necessary to make out the fraud defense are undisputed. The lease entered into by FABS and the Levins' predecessors-in-interest, which by its terms was to remain in effect until December 31, 1981, explicitly granted the lessee a right of first refusal on the purchase of the property.[8] It is also undisputed that the property was sold during the term of the lease. While these facts, standing alone, do not make out a fraud defense, this Court cannot say on the record before it that the fraud defense was wholly lacking in merit.

Moreover, the tenants presented ample evidence to the Superior Court that the balance of hardships tipped in their favor. In the absence of a stay, there was a serious risk that both FABS and Goldie's would incur loss of good will, lost profits, and moving and storage costs. In addition, for Goldie's the denial of a stay was likely to result in irreparable injury. Because Goldie's was in the business of selling sexually explicit materials and the local zoning ordinance drastically limited the availability of alternative sites, eviction was likely to result in curtailment of Goldie's' first amendment rights. By contrast, there appears to have been no showing that the Levins would suffer irreparable injury in the absence of a stay, and the tenants clearly expressed their readiness to post a bond which would cover the anticipated economic losses to the Levins.[9] For these reasons, this Court finds that Section 1176(a), as applied to the plaintiffs herein, is unconstitutional.

Accordingly, IT IS HEREBY ORDERED that the preliminary injunction issued pursuant to this Court's written order filed on October 21, 1983, be made permanent.

IT IS SO ORDERED.

---

**7.** Federal district courts must adopt the interpretation of a state statute rendered by an intermediate appellate court of that state unless there is "convincing evidence that the highest court of the state would decide differently". *Andrade v. City of Phoenix,* 692 F.2d 557, 559 (9th Cir.1982), *quoting Community National Bank v. Fidelity & Deposit Co.,* 563 F.2d 1319, 1321 n. 1 (9th Cir.1977); *accord, Owen v. United States,* 713 F.2d 1461 (9th Cir.1983). Here the exception does not apply because the D.C.A. in *Mehr* was following the express instructions of the California Supreme Court. Hence, this Court is bound by the judicial gloss *Mehr* imposed on Section 1176(a).

**8.** Paragraph 25 of the lease provides in pertinent part:

If Lessor desires to sell the leased property during the term of this Lease, it shall first offer the property in writing to Lessee if Lessee is not then in default hereunder, at the same price and upon the same terms as offered to or by a prospective bona fide purchaser...

**9.** Likewise, plaintiffs in the instant case have consistently protected the Levin defendants against any and all economic losses. Plaintiffs have filed a $10,000.00 bond for the payment of any damages which may be incurred as a consequence of the temporary and preliminary injunctions. They have also agreed to pay in a timely fashion all rents and to abide by all other terms and conditions of the lease. The Levin defendants have never suggested that plaintiffs have not lived up to their obligations as tenants.