[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
This case arises out of an attack by a dog on a five year old child. The complaint alleges that the city, its police department, chief of police and canine/animal control officers were charged with the protection of the safety of persons including the minor plaintiff. That duty includes the obligation to properly quarantine, restrain and dispose of biting or dangerous dogs. This dog strayed from premises were it was kept and is alleged to have viciously attacked this youngster.
The defendants Fuller, Grodecki, and Cloutier are animal control officers; another defendant is the Hartford Chief of Police, the City of Hartford is also a defendant.
These defendant have moved to strike counts one, twelve, and seventeen on the grounds that these due process claims, which are brought pursuant to 42 U.S.C. § 1983, must be stricken because they fail to state a claim upon which relief can be granted.
They move to strike counts two, thirteen and eighteen which CT Page 12682 make claims under the state constitution on the same basis.
They move to strike counts three through Eleven and Fourteen through sixteen on the basis of governmental immunity.
The city moves to strike counts nineteen and twenty arguing that the plaintiff's indemnification claims against the city fail to state a claim upon which relief may be granted.
The rules to be applied on motions to strike are well-known. The pleadings must be read on a light that is most favorable to the non-moving party, Amodio v. Cummingham, 180 Conn. 80, 82 (1980).
1.
The defendants base their argument that the due process claims must be stricken on DeShaney v. Winnebago County, 489 U.S. 189,109 S.Ct. 998 (1989). That court also discussed a federal due process claim under § 1983 and held that an abused child did not have a due process action against county social workers and the county. The complaint alleged that the social workers received numerous reports concerning abuse of the infant for two years prior to the last vicious beating of the child.
The reasoning of the court is set out at 489 U.S. 195,109 S.Ct. 1003:
 ". . . Nothing in the language of the Due Process Clause itself requires the state to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the state's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the state itself to deprive individuals of life, liberty or property without `due process of law', but its language cannot fairly be extended to impose an affirmative obligation on the state to ensure that those interests do not come to harm through other means." (emphasis added).
This language would appear to bar the plaintiffs' due process claims in this case but the plaintiffs seek to avoid this result by arguing that somehow DeShaney is limited to its facts: "the court CT Page 12683 was faced with a case which would create precedent in the highly complex arena of state involvement in child abuse and neglect cases and had to steer a course between the responsibility of the state to protect children, while deferring to the penumbra of privacy rights shrouding familial relationships" pp 3-4 of plaintiffs' 6/30/93 brief. There is not any indication that the court intended to so limit its holding. Its very language, see emphasis above, indicates otherwise.
The court at 489 U.S. 196, 109 S.Ct. 1003 cites several cases to support its position that there are no substantive rights requiring the government to act in cases having nothing to do with family relationships — no right to abortion funding or medical services, Harris v. McRae, 448 U.S. 297, 317 (1980); Lindsey v.Normet, 405 U.S. 56, 74 (1972) held there was no government obligation to provide adequate housing.
The plaintiffs also isolate the language of DeShaney and point to one phrase in the above quotation that says the due process clause provides no protection against invasion by "private actors". Here its argued we have a dog not an individual over whom the government has no control. Again this position has no basis in the reasoning or the language of the case — the very next sentence says the state has no obligation to prevent harm to life, liberty, or property when the harm comes not through state action but "through other means" (see above quotation).
Given the broad sweep of the opinion it cannot be said the due process clause does not apply to protecting people against actions by private individuals but does apply to attacks by dogs or some other non-human agency causing harm to liberty and property interests. The court refers to the language in Harris v. McRae,
supra where it said: "although the liberty protected by the Due Process Clause affords protection against unwarranted government interference . . . it does not confer an entitlement to such (governmental and) as may be necessary to realize all the advantages of that freedom." 448 U.S. at pp. 317-318. The characterization of the entity causing harm to liberty or property as a "private individual" has nothing to do with the basic notion advanced by the court that the life, liberty and property interests themselves — in the sense of creating and providing them — are not a governmental due process obligation. Lindsey v. Normet, supra after all dealt with failure to provide adequate housing; the failure to secure decent housing obviously could be based on a variety of factors including impersonal ones such as market forces. CT Page 12684
The plaintiffs cite several cases which are not applicable to. the discussion because they predate DeShaney or deal with failure of police to enforce the law in claimed violation of equal protection. Thurman v. City of Torrington, 595 F. Sup. 1521 (D. Conn. 1984) for example. But this case and DeShaney are not equal protection cases as DeShaney recognizes. See footnote 3 at489 U.S. 197, 109 S.Ct. 1004 where the court said:
 "3. The state may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause. See Tick Wo v. Hopkin's, 118 U.S. 356, 6 S.Ct. 1004, 30 Led 220 (1866). But no such argument is made here.
The plaintiffs also cite the case of Ross v. U.S., 910 F.2d 1422
(C.A. 7, 1990) but it is of no help to their position. In that case the county being sued was alleged to have a policy which prevented unauthorized civilians from attempting to rescue people in danger of drowning. The court held this deprived the victim of due process. The court reasoned that the case before it was distinguishable from DeShaney because: "The plaintiff does not allege that the county had a policy of refusing services. Rather, the wrong suffered by the plaintiff and her decedent is the county's forced imposition of services that (the decedent) did not want or need; the plaintiff alleges that the county had a policy of arbitrarily cutting off private sources of rescue without providing a meaningful alternative", Id. p. 1431. This is not the case we have here. Here the basis of the § 1983 action is an allegation that the defendants had an "opportunity to protect the plaintiff . . . "but each defendant failed and refused to perform such duty" (par. 6, first count). There is no claim that the defendants prevented others from protecting the plaintiff as individuals or even that the regulatory scheme of animal control served to forestall other individuals, groups or agencies from providing that protection. An ancient statute now embodied in § 22-374 of the general statutes even permits private persons to take an animal into custody found on his premises or on a highway opposite to his premises, § 22-358 permits a person to kill a dog who is attacked and bitten. The requirements of a violation of federal due process have not been met under DeShaney so I will strike counts one, twelve, and seventeen. CT Page 12685
2.
Counts two, thirteen, and eighteen make claims for money damages for rights allegedly secured to the plaintiff under the due process clause of the state constitution.
Both sides seem to assume there is an adequate basis to make a claim on the facts alleged in this complaint that there has been a violation of the state's guarantee of due process under the state constitution. If our due process clause were to be given only the ambit set forth in DeShaney then this complaint would fail. But certainly our Supreme Court can interpret the state constitution in a manner that affords greater protection than the federal constitution, State v. Barton, 219 Conn. 529, 546 (1991). Perhaps our Supreme Court will adopt the dissents characterization ofDeShaney's holding as giving due process "a stingy scope" and adopt their view that "if a state cuts off private sources of aid and then refuses to aid itself, it cannot wash its hands of the harm that results from its action." Depending on how one defines "cuts off" this can go far beyond Ross v. U.S. supra. All this is not before me on this motion to strike, however. The defendants don't question the assertion of the substantive state due process right rather they flatly state that money damages cannot be awarded for a violation of the Connecticut Constitution.
The defendants cite a Federal District court case to support their position, Richard Gonzalez, et al. v. City of Hartford (Civ. Action No. 393 CV 01544 (D. Conn. 1994). That case relies onKelley Property Development Inc. v. Lebanon, 226 Conn. 314
(1993) to reject a claim for money damages under the state constitution. The Gonzalez court notes that:
 "Unlike the Federal Constitution, the Connecticut constitution does not provide for a money damage claim through a statute or through a Bivens — type action. The Connecticut Supreme Court has yet to recognize a common law precedent for the existence of a constitutional claim for damages for any and all alleged misconduct by state and local government officers' Kelly Property Development Inc. v. Lebanon, 226 Conn. 314, 333 (1993)."
But the portion of the Kelly opinion referred to in Gonzalez
CT Page 12686 refers to a monetary claim made under article 10 of our constitution, see 226 Conn. 331-333. A different analysis is clearly required when the monetary claim is made under the state due process clause — at least our Supreme Court thought so, see discussion at 226 Conn. 334-343. Our court's discussion makes clear that it was not prepared to reject out of hand a claim for monetary damages based on our due process clause. It noted the parties assumed the court had the power to so decide and for the purposes of the appeal made the same assumption, citing Sheets v.Teddy's Frosted' Foods Inc., 179 Conn. 471, 480 (1980), Urban v.Hartford, 139 Conn. 301, 307 (1952), Bivens v. Six Unknown NamedAgents of the FBI, 403 U.S. 338, 402 (1971)[1] and perhaps most significantly the clearly enunciated, widely accepted and matter of fact statement set forth in 4 Restatement (Second) Torts, § 874, comment (a) permitting such an action in appropriate circumstances226 Conn. at p. 334 footnote 26. It would be a rather odd state of affairs to permit a monetary cause of action in certain limited circumstances even though a statute doesn't provide for it in accordance with the principles set forth in the Restatement and flatly hold no such remedy can be provided for as to a violation of the state constitution under every and all circumstances and no matter what constitutional claim is made.
I can't accept that broad claim. As the court noted in Kelley
if the Bivens analysis, were to apply it should probably be modified by the later Supreme Court cases of Carlson v. Green,446 U.S. 14 (1980) and Davis v. Passman, 442 U.S. 228 (1979). But the briefs and arguments presented by both sides here don't permit me to apply a Bivens type analysis at this stage of the proceedings. The critical factors necessary to a resolution of the question of the appropriateness of a monetary damage action (1) inadequacy or absence of an alternative remedy (2) absence of explicit direction from the legislature that no damages should lie (3) the absence of any special factors counselling hesitation such as fiscal policy,226 Conn. at p. 336, have not been explored and barely touched on by the parties. I'm not sure these matters can be dealt with by means of a motion to strike, a broader record may be needed that can be developed in a summary judgment proceeding or at trial.
In any event based on the arguments presented I am not prepared to say as a matter of law that no cause of action for monetary damages exists under our constitution or to put it another way the record on which I have to base this decision by means of a motion to strike doesn't permit me to make that ruling of law. CT Page 12687
3.
The defendants move to strike counts three through eleven and counts fourteen through sixteen on the basis of governmental immunity.
The plaintiffs first make the broad argument that the availability of governmental immunity depends on facts and circumstances of a case and because a motion to strike won't permit a factual inquiry to determine whether immunity applies the immunity claims cannot be raised on a motion to strike.
As a general statement, this is simply not true. A trial court can grant a motion to strike based on governmental immunity by examining the allegations of a complaint, Gordon v. BridgeportHousing Authority, et al. 208 Conn. 161 (1988). In Gordon the court said "This court has approved the practice of deciding the issue of governmental immunity as a matter of law" Id. p. 170 and merely noted that in passing on such a motion the facts of the complaint must be construed in a manner most favorable to the plaintiff.
The plaintiffs also argue that since the complaint explicitly states the individual defendants are sued in their official and personal capacity governmental immunity is not available to these defendants.
Admittedly municipal employees have qualified not absolute immunity. But such immunity is granted public officials not to just to benefit them as such but to ensure that within certain defined parameters public officials are able to act freely without fear of personal liability. To allow even qualified immunity to be circumvented by merely asserting the suit is brought against the defendant municipal employee as a private individual defeats the whole purpose of granting governmental immunity of any kind in the first place. Hafer v. Melo, 116 L.Ed.2d 301 (1991) and Scheur v.Rhodes, 416 U.S. 232 (1973) are not on point. Those cases merely said that § 1983 actions brought against state officials in their personal capacity were not foreclosed by the Eleventh Amendment which bars suits in federal court which have to be paid from state treasures. Neither of these cases held the state officials so sued couldn't raise qualified immunity defenses otherwise available to them.
It is necessary them to examine the merits of the defendants' CT Page 12688 motion to strike on the issue of governmental immunity.
The complaint alleges the defendant animal control officers were "charged with the protection of the health and safety of persons including the minor plaintiff which includes the duty to properly quarantine, restrain, and dispose of biting or dangerous dogs." The complaint then goes on to allege that the defendants "were negligent and careless in failing or refusing to properly quarantine, restrain and dispose of the aforesaid dog which attacked and bit the plaintiff." The police chief is alleged to have negligently failed to properly hire and supervise his officers in the quarantining and disposing of dangerous dogs and also to have negligently failed to promulgate and enforce appropriate procedures regarding such quarantining.
Shore v. Stonington, 187 Conn. 147, 152 (1982) and Gordon v.Bridgeport Housing Authority, set forth the law in this area. If the duty which is imposed on an official is a duty to the public a failure to perform it or an inadequate or erroneous performance of the duty is a public injury and can only be redressed by a public prosecution not a private action. But there is an exception to this general rule. If the duty, even if a public one, is ministerial — that is the official has to perform it by statute, regulation or other rule of law — then an individual can bring suit for negligent performance of the so-called ministerial duty.
What this says then is if the duty is a public one and is not ministerial but is a duty where the official has discretion whether to act or not to act then no individual suit can be brought.
But there is a further exception to this latter proposition. Even if a public duty is involved and the act is discretionary an injured individual can bring suit if (1) it is apparent to the official that his failure to act would be likely to subject an identifiable person to imminent harm (2) a statute specifically provides for a cause of action for failure to enforce certain laws (3) the complaint against the official alleges he or she acted maliciously, wantonly, or with intent to injure rather than just negligently.
The first question to be decided is whether the duties that the defendant animal control officers and the police chief are alleged to have violated are duties owed to the public as opposed to a duty to the individual, Gordon, 208 Conn. at p. 166. Gordon
cites Leger v. Kelley, 142 Conn. 585 (1955) which at pp. 590-591 CT Page 12689 sets forth the test.
 "If the duty imposed upon the public official by the statute is of such a nature that the performance of it will affect an individual in a manner different in kind from the way it affects the public at large, the statute is one which imposes upon the official a duty to the individual and if the official is negligent in the performance of that duty he (sic) is liable to the individual."
Thus the Leger court said the duty to provide safe drinking water is a public one and and individual who becomes ill from drinking contaminated water can't claim otherwise against the official charged with the duty. Similarly a sheriff who fails to protect someone against a mob can't be sued by the injured individual on the basis that his or her duty was not one owed to the public but the injured individual. Examples of duties owed to an individual would be a case where a statute required a candidate to be listed and and the official failed to do so, a person whose property has been specially assessed for road improvements can recover from road commissioners who contracted for in favor material, 142 Conn. at p. 590.
It doesn't require a great deal of discussion to determine that the duties alleged to have been violated by each of these defendants are duties owed to the public.
The plaintiffs in their brief don't appear to contest this conclusion.
The only argument the plaintiffs make based on the allegations of the complaint is that the defendants here, even if they had a public duty must be held liable because their duty was ministerial, they had no discretion whether or not to act and thus the defendants cannot rely on governmental immunity.
The plaintiffs point to the allegations made against all the defendants that they had "the duty to properly quarantine, restrain and dispose of biting dogs or dangerous dogs" and the defendants failed or refused to do so. They cite Wright v. Brown, 167 Conn. 464
(1975) where the court held there was no governmental immunity from negligence for the premature release from quarantine of a known biting dog which then bit the plaintiff. The quarantine CT Page 12690 statute mandates that a dog be quarantined for 14 days. The plaintiffs misread Wright. The fifth count of the complaint inWright alleged negligence in the "breaking" of the quarantine — that is negligence because although a dog already quarantined had to be quarantined for 14 days by statute, the dog there was let out before the 14 days. The court explicitly said the determination of whether or not to quarantine in the first instance was a discretionary one. See 167 Conn. pp. 471-472.
Counts three through eleven and fourteen through sixteen are stricken.
4.
In light of my decision not to strike the state due process claims I will not strike the 19th and 20th counts against the city.
Conclusion
The counts stricken are one, twelve, and seventeen (§ 1983 claims) and counts three through eleven and fourteen through sixteen, (negligence claims).
I will not strike counts two, thirteen, eighteen, nineteen and twenty.
Thomas Corradino, Judge